TENNESSEE DEPARTMENT OF HUMAN SERVICES, ex rel. Lisa Ann Hayes YOUNG, Petitioner–Appellee,

v.

Johnny Charles YOUNG, Respondent–Appellant.

Supreme Court of Tennessee, at Knoxville.

Dec. 31, 1990.

Jeffrey A. Armstrong, Legal Services of Upper East Tennessee, Inc., Morristown, for respondent-appellant.

Charles W. Burson, Attorney General and Reporter, and Stuart F. Patton, Asst. Atty. Gen., Nashville, for petitioner-appellee.

DAUGHTREY, Justice.

## OPINION

In this appeal, we are asked to determine whether federal Supplemental Security Income (SSI) benefits are subject to legal process in the state courts of Tennessee for the payment of court-ordered child support. Because we disagree with the conclusion reached by both the trial judge and the Court of Appeals that applicable federal statutes permit garnishment of such funds, we reverse the judgment entered below.

## FACTUAL BACKGROUND

The parties in this case, Lisa Ann Hayes Young and Johnny Charles Young, were divorced in June 1986. They had one child, a daughter, who was at that time almost one year old. The final decree gave custody of this child to the mother and ordered the father to pay $100 per month for child support. Payments were to be made to the State of Tennessee, which was supplying the mother with benefits under the Aid to Families with Dependent Children program, in the amount of $117 per month.

Eventually, the father fell behind in his support payments, and the Department of Human Services filed a contempt proceeding against the father. He was found by the child support referee to be $700 in arrears and ordered to resume his former payments of $100 per month. This time, however, the judgment called for garnishment of his "SSI check" through the Social Security Administration. No arrangement for payment of the arrearage was included in the order.

The father demanded a hearing before the domestic relations judge, where he was able to establish to the court's satisfaction that his "only source of income has been and still is Supplemental Security Income" in the amount of $386 per month. The trial judge was not persuaded by the argument that this income was exempt from legal process, however, and affirmed the referee's garnishment order.

On appeal to the Court of Appeals, the father was likewise unsuccessful, and he now brings his claim, which presents a federal question, to this court for vindication. Based upon our interpretation of applicable statutory provisions, we conclude that the claim is indeed meritorious.

## THE FEDERAL STATUTES

The record does not specify the nature of Johnny Young's disability, but we know from 42 U.S.C. § 1381 (1983), that he must be blind, disabled, or 65 or older and in need of welfare assistance in order to qualify for federal SSI benefits. These benefits are authorized by a 1972 amendment to the Social Security Act that was intended by Congress "to assist those who cannot work because of age, blindness, or disability," by "setting a Federal guaranteed minimum income level for aged, blind, and disabled persons." *Schweiker v. Wilson*, 450 U.S. 221, 223, 101 S.Ct. 1074, 1077, 67 L.Ed.2d 186 (1981) (quoting S.Rep. No. 92–1230 at 4, 12 (1972), U.S.Code Cong. & Admin. News 1972, 4989).

In creating the Supplemental Security Income program, Congress extended to SSI benefits the same protection from legal process, such as garnishment or attachment, that had previously been granted to Social Security disability benefits. 42 U.S.C. § 1383(d)(1). This anti-garnishment statute, 42 U.S.C. § 407 (1983), provides as follows:

(a) Inalienability of right to future payments

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the monies paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

(b) Inamendability of section by reference.

No other provision of law, enacted before, on, or after the date of enactment of this section [April 20, 1983], may be construed to limit, supersede, or otherwise modify the provisions of this section *except to the extent that it does so by express reference to this section* (emphasis added).

Subsequent to the enactment of § 407, the Congress did adopt, as part of the Child Support Enforcement Act of 1975, 42 U.S.C. §§ 651–662 (1983), a limited waiver of sovereign immunity that provides for the enforcement of child support. That provision, found in 42 U.S.C. § 659(a), is as follows:

Notwithstanding any other provision of law (including section 407 of this title) effective January 1, 1975, moneys *(the entitlement to which is based upon remuneration for employment)* due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments (emphasis supplied).

The phrase in § 659 "the entitlement to which is based on remuneration for employment" is defined in 42 U.S.C. § 662 as follows:

For the purposes of section 659 of this title

\*   \*   \*   \*   \*   \*

(f) Entitlement of an individual to any money shall be deemed to be "based upon remuneration for employment", if such money consists of—

(1) compensation paid or payable for personal services of such individual, whether such compensation is denominated as wages, salary, commission, bonus, pay, or otherwise, and includes but is not limited to, severance pay, sick pay, and incentive pay, but does not include awards for making suggestions, or

(2) periodic benefits (including a periodic benefit as defined in section 428(h)(3) of this title) or other payments to such individual under the insurance system established by subchapter II of this chapter or any other system or fund established by the United States (as defined in subsection (a) of this section) which provides for the payment of pensions, retirement or retired pay, annuities, dependents or survivors' benefits, or similar amounts payable on account of personal services performed by himself or any other individual (not including any payment as compensation for death under any Federal program, any payment under any Federal program established to provide "black lung" benefits, any payment by the Veterans' Administration as pension, or any payments by the Veterans' Administration for compensation for a service-connected disability or death, except any compensation paid by the Veterans Administration to a former member of the Armed Forces who is in receipt of retired or retainer pay if such former member has waived a portion of his retired pay in order to receive such compensation), and does not consist of amounts paid, by way of reimbursement or otherwise, to such individual by his employer to defray expenses incurred by such individual in carrying out duties associated with his employment.

We point out the obvious by noting that SSI benefits are not mentioned in this definitional section. Additionally, we note that the federal Office of Personnel Management has proposed an amendment to 5 C.F.R. § 581.104(j) "to clarify the fact that Supplemental Security Income ... benefits ... are not remuneration and, therefore, are not subject to garnishment." 55 Federal Register 37882 (September 14, 1990).

### ANALYSIS

The state nevertheless insists that because Social Security disability benefits are now subject to legal process for the payment of child support, SSI payments should be likewise deemed subject to such process. The code provisions referred to in the above statute as "subchapter II of this chapter" include 42 U.S.C. § 401 through § 433. Essentially, these sections establish the federal Social Security disability program and the Federal Old–Age and Survivors Insurance Trust Fund. The Supplemental Security Income program is detailed in subchapter XVI, 42 U.S.C. §§ 1381–1383d. Because 42 U.S.C. § 1383(d)(1), which applies to SSI benefits, incorporates the anti-garnishment protections afforded to Social Security disability benefits by 42 U.S.C. § 407, and because the definition in 42 U.S.C. § 662 makes it clear that 42 U.S.C. § 659 now waives the sovereign immunity that formerly protected Social Security disability benefits from legal process to collect child support payments, the state asserts that this waiver extends to SSI benefits and that process may issue to collect child support from SSI payments.

█ This argument, while recognizing the facial similarity between the two programs, ignores a crucial distinction—SSI payments are a form of public assistance and have nothing to do with earnings a person may have had. It is essentially a safety net program, to protect indigent persons who are otherwise qualified for the program.[1] *See* 42 U.S.C. § 1381; 20 C.F.R. § 416.110. SSI was created to benefit per-

sons who are entitled to little or no income from Social Security disability benefits. S.Rep.No. 92–1230, pp. 12 and 13. Consistent with the concept of the program, the Senate Committee which drafted the Report on the Social Security Amendments of 1972 anticipated that potential recipients would be required to apply for and make every effort to obtain all other benefits for which they might be eligible. S.Rep.No. 92–1230, p. 386. Only after all other sources have been explored is eligibility for SSI benefits determined. Hence, the amount of money to which an SSI recipient is entitled is contingent upon how little a person makes or has made rather than how much. An eligible SSI recipient's benefits are the amount necessary to raise the recipient's income to the prescribed minimum level. By contrast, the amount of a Social Security disability recipient's benefits is keyed to how much that person has paid into the Social Security system over time. *See* "Computation of Primary Insurance Amount," 42 U.S.C. § 415 (Supp.1990). As noted above, SSI is not mentioned as "remuneration for employment" in the definition at 42 U.S.C. § 662(f). Because the entitlement to SSI benefits is not based upon remuneration for employment, it follows that the waiver of sovereign immunity contained in 42 U.S.C. § 659(a) does not apply to funds in the nature of SSI payments.

Further, the federal statutes which protect SSI monies, 42 U.S.C. § 404; § 1383, preempt the application of state law in this situation because the issuance of legal process of any sort to reach these SSI funds, either payable or paid, would substantially frustrate the primary purpose of the SSI program. The standard for determining whether federal preemption applies in this sort of case is set forth in *Rose v. Rose*, 481 U.S. 619, 625, 107 S.Ct. 2029, 2033–34, 95 L.Ed.2d 599 (1987) as follows:

> ... We have consistently recognized that "[t]he whole subject of the domestic rela-

---

1. SSI does not raise the recipient above the poverty line. Counsel for father points out that the 1990 poverty income guideline for a household of one is $524 per month, citing 55 C.F.R. 5664 (2/16/90), an amount which is significantly more than the $386 per month to which this recipient is entitled.

tions of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." [citations omitted] On the rare occasions when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has "positively required by direct enactment" that state law be preempted. [citations omitted]. Before a state law governing domestic relations will be overridden, it must do "major damage" to "clear and substantial" federal interests.

Obviously, to allow process to issue for the collection of child support obligations from SSI funds would reduce the monthly income of the obligor SSI recipient. Because of the nature of the program's mission, SSI recipients have a very low income level and little, if any, opportunity to raise that level because of their age or disability. Subtracting child support payments, in the variable amounts set by state trial judges, from this already low figure would reduce the individual recipient's income below the "guaranteed minimum income level for aged, blind, and disabled persons," *Schweiker v. Wilson, supra,* 450 U.S. at 223–224, 101 S.Ct. at 1077, which is the essence of the legislative intent behind the SSI program.

■ Implicit in the SSI program, and the broader scheme of which it is a part, is the intention that these payments are for the benefit of the individual recipient, rather than for the benefit of the recipient and the recipient's dependents. The Senate Report on the Social Security Amendments of 1972 describes the SSI program as a plan "designed to provide a positive assurance that the Nation's aged, blind, and disabled people would no longer have to subsist on below-poverty-level incomes." S.Rep.No. 92–1230, p. 384. The 1972 amendments also provided for Aid to Families with Dependent Children, a program which "offers welfare payments to families in which the father is dead, absent, *disabled,* or, at the State's option, unemployed." S.Rep.No. 92–1230, p. 505 (emphasis supplied). See

also the definition of "dependent child" at 42 U.S.C. § 606(a) (1983). Thus, although "[t]he Committee believe[d] that all children have the right to receive support from their fathers," S.Rep.No. 92–1230, p. 505, the AFDC program it established provides that payments to the children of disabled fathers are separate from payments to the disabled fathers themselves. Had it been the intent of Congress that SSI funds would also benefit the recipient's dependents, these payments obviously would not have been set up in this way.

By contrast, Social Security disability benefits, which are determined on the basis of wages and self-employment income of the insured, do benefit the dependent children of the insured individual. In fact, children of individuals entitled to disability insurance benefits receive a separate payment which increases after the death of the insured and which may extend until the child reaches the age of nineteen. 42 U.S.C. § 402(d) (Supp.1990). The amount of this benefit is described as follows:

> (2) Such child's insurance benefit for each month shall, if the individual on the basis of whose wages and self-employment income the child is entitled to such benefit has not died prior to the end of such month, be equal to one-half of the primary insurance amount of such individual for such month. Such child's insurance benefit for each month shall, if such individual has died in or prior to such month, be equal to three-fourths of the primary insurance amount of such individual.

42 U.S.C. § 402(d)(2). This increase at the death of the insured, when the insured's payments cease, 42 U.S.C. § 402(a), indicates Congressional intent that part of the insured's benefits would go toward helping support the insured's children. When that source of support ceases at the insured's death, the child's separate payment increases.

■ We address, finally, the conclusion reached by the Court of Appeals that SSI benefits are subject to the same treatment as social security disability payments, be-

cause of a provision in 42 U.S.C. § 1383(d)(1), as follows:

> The [anti-garnishment] provisions of section 407 of this title ... shall apply with respect to this part [governing SSI benefits] to the same extent as they apply in the case of subchapter II of this chapter [governing social security payments].

The Court of Appeals reasoned that in creating the limited waiver of sovereign immunity for child support enforcement contained in 42 U.S.C. § 659, Congress intended to treat SSI benefits under subchapter XVI the same as Social Security payments under subchapter II. But this reasoning overlooks the fact that § 407(b) specifically prohibits modification of the anti-garnishment provision in § 407(a) other than by express reference, and that § 659, enacted after the provision in § 1383(d)(1) set out above, makes no express reference to the exemption of SSI benefits from the grant of sovereign immunity. Indeed, as we have already emphasized, § 659 applies *only* to monies paid by the federal government, "the entitlement to which is based upon remuneration for employment." Because SSI benefits are paid to those who are by definition unemployed *and* unemployable, the receipt of SSI benefits cannot be said to be based upon "remuneration for employment." By definition, then, SSI payments are not included in the funds to which "express reference" is made and thus SSI benefits fall within the pre-existing anti-garnishment provisions of § 407(a).

We conclude that the reliance by the Court of Appeals on the holding in *Mariche v. Mariche*, 243 Kan. 547, 758 P.2d 745 (1988), is therefore misplaced. The benefits at issue there were subchapter II benefits, resulting from Social Security disability qualification, and not SSI benefits under subchapter XVI.

The question of how SSI benefits should be considered has been addressed in only a few domestic relations cases. Most are not on point. *See e.g., Sheets v. Sheets*, 106 N.M. 451, 744 P.2d 924 (N.M.App.1987) (entitlement to SSI does not reduce right to alimony); *Ely v. Ely*, 139 Vt. 238, 427 A.2d 361 (1981) (wife's SSI benefits do not offset husband's alimony obligations); *Pyke v. Dept. of Social Servs.*, 182 Mich.App. 619, 453 N.W.2d 274 (1990) (department may consider one spouse's SSI benefits in assessing other spouse's need for general assistance benefits). However, the general issue now before us has been addressed in only one other reported case. In *Ex Parte Griggs*, 435 So.2d 103 (Ala.Civ.App.1983), the Alabama Court of Civil Appeals held that SSI benefits may be subjected to a claim for past-due child support payments. The court relied on cases which they describe as interpreting exemption statutes, such as 42 U.S.C. § 407, as "protect[ing] the recipient and his family from the claims of creditors." *Griggs*, at 104.

We cannot agree with the Alabama Court's interpretation in *Griggs*. All the cases cited in that opinion predate the 1972 legislation that created the SSI program by amending the Social Security Act. They also predate the Child Support Enforcement Act of 1975, which waives sovereign immunity to allow the collection of child support from various federal payments including Social Security disability payments. We conclude that the terms of these statutes give strong evidence of Congressional intent that SSI payments are for the benefit of the recipient alone. While the recipient may spend these funds anyway she or he chooses, we decline to hold that the recipient's family falls within a "protected category" so as to create an inescapable obligation upon the recipient.

We therefore hold that the defendant's SSI benefits were not subject to the garnishment order entered in the trial court. This holding is consistent with those of the courts of Wisconsin and New York. In *Langlois v. Langlois*, 150 Wis.2d 101, 441 N.W.2d 286, 288 (App.1989), the Wisconsin Court of Appeals recognized that SSI benefits are "exempt from every process and inalienable," and therefore "cannot be burdened by a child support order." Similarly, in *Moore v. Sharp*, 143 A.D.2d 541, 541, 532 N.Y.S.2d 811, 812 (N.Y.A.D. 4 Dept. 1988), the New York court held that a child support order against an SSI recipient "was improper since it was made without

appropriate concern for petitioner's ability to pay ... [given that he] receives only minimal income sufficient to meet his basic needs."

## CONCLUSION

We take no pleasure in reaching the conclusion that a father need not share at least some part of his income, however meager, with his minor child, especially one whose current level of public assistance is even more impoverished than her father's. As the highest court in the land has noted, "family support obligations are deeply rooted moral responsibilities," *Rose v. Rose*, 481 U.S. 619, 633, 636, 107 S.Ct. 2029, 2037, 2039, 95 L.Ed.2d 599 (1987), and thus Johnny Charles Young's obligation to support his daughter amounts to a "moral imperative." *Id.* at 634, 107 S.Ct. at 2038. But in the same opinion, the United States Supreme Court also noted that waivers of federal sovereign immunity must be strictly construed, *id.* at 635, 107 S.Ct. at 2038, presumably against the party claiming the waiver. In the absence of federal statutory or case law to the contrary, we have no choice but to uphold the anti-garnishment provisions of 42 U.S.C. § 407(a), and to hold that the trial court's order against the Social Security Administration must be vacated, as a violation of federal law.

The judgment of the Court of Appeals is reversed, and the case is remanded to the trial court without instructions. Costs will be divided equally between the state and the appellant.

REVERSED AND REMANDED.

REID, C.J., and DROWOTA, O'BRIEN and ANDERSON, JJ., concur.