626 A.2d 1180

**Betty WHITMORE, Appellee,**

v.

**Deborah KENNEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 27, 1993.

Filed April 16, 1993.

Reargument Denied June 28, 1993.

Deborah L. Barr, Towanda, for appellant.

Sam W. Lewis, Asst. Dist. Atty., Montrose, for appellee.

Before McEWEN, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

This case involves an appeal from an order of the Court of Common Pleas of Susquehanna County (directing the payment of $20 per week for child support and $26.55 in attorney's fees) by the appellant, Deborah Kenney. We affirm in part and reverse in part.

The record evidences that Betty Whitmore filed a complaint for the support of twins James and Jason Kenney, both of whom were fourteen years old and the natural children of the appellant and the grandchildren of Whitmore.

After a hearing, in which Ms. Kenney appeared *pro se* and Ms. Whitmore was represented by the Domestic Relations Office (DRO) through the Office of the District Attorney, an order was entered directing Ms. Kenney to pay $20 per week toward the support of the twins. Thereafter, the Northern Pennsylvania Legal Services, Inc. (NPLS) entered an appearance on behalf of Ms. Kenney and filed exceptions alleging that Ms. Kenney was disabled (an epileptic suffering from Turitz Syndrome), receiving Supplemental Security Income (SSI) as the only source of revenue because of her malady, and that any agreement negotiated with Ms. Kenney to pay support was the result of "overreaching" on the part of the

DRO and the District Attorney's Office rendering the agreement "voidable . . . as a matter of law since disabled persons receive money for basic necessities [and] Federal Statute/Regulations prohibit such an assessment. . . ."

On April 28, 1992, a hearing was conducted resulting in an order of even date directing Ms. Kenney to pay child support in the amount of $20 per week and NPLS to pay $26.55 in attorney's fees to the Susquehanna County District Attorney's Office for failing to appear at the April 28th hearing. An appeal followed and raises two issues for our consideration, the first of which has yet to be addressed by an appellate court of this jurisdiction, and concerns whether SSI benefits are exempt, by either federal statute or state law, from "legal process" precluding the lower court from directing the appellant to pay child support.

We begin our inquiry with an observation as to the origin and purpose of SSI: In October of 1972, Congress amended the Social Security Act to create the federal SSI program. 42 U.S.C. § 1381 *et seq.* This program was intended "[t]o assist those who cannot work because of age, blindness, or disability," S.Rep. No. 92–1230, p. 4 (1972), U.S.Code Cong. & Admin.News, p. 4989, by "set[ting] a Federal guaranteed minimum income level for aged, blind, and disabled persons." [1] *Id.* at 12; 20 C.F.R. § 416.110 (1992).

Additionally, Congress took measures to insulate SSI benefits from legal process, such as garnishment and attachment, that had been granted to Social Security disability benefits. 42 U.S.C. § 1383(d)(1) (Supp.1993). The anti-garnishment/at-

1. The SSI program is found in Title XVI of the Social Security Act. See 42 U.S.C. § 1381 *et seq.* And, SSI largely replaced the prior system of federal grants to state-run assistance programs for the aged, blind, and disabled in Titles I, X, XIV, and XVI of the Social Security Act. See *Califano v. Aznavorian,* 439 U.S. 170, 171, 99 S.Ct. 471, 472, 58 L.Ed.2d 435 (1978).

Also, to be eligible for SSI benefits a person must be "aged," that is 65 or older, or "blind," or "disabled," as those terms are defined by the Social Security Act, and his/her income and resources must be below the levels specified by law. See *Schweiker v. Wilson,* 450 U.S. 221, 224 n. 2, 101 S.Ct. 1074, 1077 n. 2, 67 L.Ed.2d 186 (1981); 20 C.F.R. § 416.110 (1992).

tachment/execution/levy provision of the SSI program appears at 42 U.S.C. § 407:

§ **407. Assignment ...**

(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

(b) No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

As amended April 20, 1983, Pub.L. 98–21, Title III, § 335(a), 97 Stat. 130.

After passage of Section 407, Congress promulgated, as part of the Child Support Enforcement Act of 1975, 42 U.S.C. §§ 651–662 (1983), a limited waiver of sovereign immunity which provides for the enforcement of child support. The provision is located in 42 U.S.C. § 659(a):

§ **659. Enforcement of individual's legal obligations to provide child support or make alimony payments**

**(a) United States and District of Columbia to be subject to legal process**

Notwithstanding any other provision of law (including section 407 of this title) effective January 1, 1975, moneys *(the entitlement to which is based upon remuneration for employment )* due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.

As amended April 20, 1983, Pub.L. 98–21, Title III, § 335(b)(1), 97 Stat. 130 (Emphasis added).

The phrase "entitlement to which is based on remuneration for employment" appearing in Section 659(a) is defined in 42 U.S.C. § 662 as follows:

(f) Entitlement of an individual to any money shall be deemed to be "based upon remuneration for employment", if such money consists of—

(1) compensation paid or payable for personal services of such individual, whether such compensation is denominated as wages, salary, commission, bonus, pay, or otherwise, and includes but is not limited to, severance pay, sick pay, and incentive pay, but does not include awards for making suggestions, or

(2) periodic benefits (including a periodic benefit as defined in section 428(h)(3) of this title) or other payments to such individual under the insurance system established by subchapter II of this chapter or any other system or fund established by the United States (as defined in subsection (a) of this section) which provides for the payment of pensions, retirement or retired pay, annuities, dependents' or survivors' benefits, or similar amounts payable on account of personal services performed by himself or any other individual (not including any payment as compensation for death under any Federal program, any payment under any Federal program established to provide "black lung" benefits, any payment by the Secretary of Veterans Affairs as pension, or any payments by the Secretary of Veterans Affairs as compensation for a service-connected disability or death, except any compensation paid by the Secretary of Veterans Affairs to a former member of the Armed Forces who is in receipt of retired or retainer pay if such former member has waived a portion of his retired pay in order to receive such compensation), and does not consist of amounts paid, by way of reimbursement or otherwise, to such individual by his employer to defray expenses in-

curred by such individual in carrying out duties associated with his employment.

As amended June 13, 1991, Pub.L. 102–54, § 13(q)(3)(B)(ii), 105 Stat. 279.

Nowhere in Section 659(a) is there any mention of SSI benefits. This would lead one to believe, and logically so, that SSI benefits are not subject to garnishment. See 5 C.F.R. § 581.104(k) ("*Moneys which are not subject to garnishment* [:] ... (k) Supplemental Security Income (SSI) payments made pursuant to sections 1381 et seq., of title 42 of the United States Code (title XVI of the Social Security Act).").

Accordingly, premised on the aforesaid, the appellant argues that the court below erroneously categorized her SSI benefits as a "disability" benefit pursuant to Subchapter II—Federal Old–Age, Survivors, and Disability Insurance Benefits—under the Social Security Act, rather than looking to Subchapter XVI—Supplemental Security Income for Aged, Blind, and Disabled—which established the SSI program. 42 U.S.C. §§ 401–403, 1381–1383(d). In doing so, urges the appellant, the court below misinterpreted the definitional section of the support subchapter of the Domestic Relations Act and its companion rule to run afoul of case law (e.g., *Bennett v. Arkansas,* 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988)) and the United States Constitution, Art. VI, cl. 2 (Supremacy Clause). See Appellant's Brief at 12–13. We disagree.

In *Rose v. Rose,* 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1981), the United States Supreme Court upheld the right of a state court to authorize an award of a veteran's disability benefits as child support, the enforcement of which was not pre-empted by 38 U.S.C. § 3101(a),[2] an anti-attach-

2. Section 3101(a) provided in relevant part that "[p]ayments of benefits ... under any law administered by the Veterans' Administration ... made to, or on account of, a beneficiary ... shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." See *Rose v. Rose,* 481 U.S. 619, 630, 107 S.Ct. 2029, 2036, 95 L.Ed.2d 599 (1981); renumbered and amended August 6, 1991, Pub.L. 102–83, § 5(a), (c)(1), 105 Stat. 406.

ment/levy/seizure statute whose dual purpose was not compromised; to-wit:

> The contempt proceeding [—initiated for the veteran's failure to abide by the support by order—] did not turn the Administrator into a collection agency; the Administrator was not obliged to participate in the proceeding or to pay benefits directly to appellee [mother of the child]. Nor did the exercise of state-court jurisdiction over appellant's disability benefits *deprive appellant of his means of subsistence* contrary to Congress' intent, for these benefits are not provided to support appellant alone.
>
> Veterans' disability benefits compensate for impaired earning capacity. H.R.Rep. No. 96–1115, p. 4 (1980), and are intended to "provide reasonable and adequate compensation for disabled veterans *and their families.*"

481 U.S. at 630, 107 S.Ct. at 2036 (Emphasis added in part; citation omitted).

Moreover, the court found unpersuasive the appellant's assertion that the Child Support Enforcement Act foreclosed veterans' disability benefits from "any legal process". On this point, the Court wrote:

> The first provision [of the Child Support Enforcement Act] declares:
>
> > "[M]oneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States ... to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States ... were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support ..." 42 U.S.C. § 659(a) (1982 ed. Supp. III).

Appellant, however, also points to the statutory definition of an entitlement "based upon remuneration for employment," which specifically excludes "any payments by the Veterans' Administration as compensation for a service-connected disability...." § 662(f)(2). This exclusion, argues appellant,

embodies Congress' intent that veterans' disability benefits not be subject to *any* legal process aimed at diverting funds for child support, including a state-court contempt proceeding of the sort invoked in this case.

But § 659(a) does not refer to *any* legal process. The provision was intended to create a limited waiver of sovereign immunity so that state courts could issue valid orders directed against agencies of the United States Government attaching funds in the possession of those agencies:

> "The term 'legal process' means any writ, order, summons, or other similar process in the nature of garnishment ... issued by [a state court] ... and ... *directed to, and the purpose of which is to compel a governmental entity,* which holds moneys which are otherwise payable to an individual, *to make a payment* from such moneys to another party in order to satisfy a legal obligation of such individual to provide child support...." § 662(e) (emphasis added).

See also 5 CFR § 581.102(f) (1986); S.Rep. No. 93–1356, pp. 53–54 (1974), U.S.Code Cong. & Admin.News p. 8133. Waivers of sovereign immunity are strictly construed, and we find no indication in the statute that a state-court order of contempt issued against an individual is precluded where the individual's income happens to be composed of veterans' disability benefits. *In this context, the Veterans' Administration is not made a party to the action, and the state court issues no order directing the Administrator to pay benefits to anyone other than the veteran. Thus, while it may be true that these funds are exempt from garnishment or attachment while in the hands of the Administrator, we are not persuaded that once these funds are delivered to the veteran a state court cannot require that veteran to use them to satisfy an order of child support.*

481 U.S. at 634–35, 107 S.Ct. at 2038–39 (Emphasis added).

Thus, *Rose,* supra, would appear to vitiate the appellant's argument that the trial court's April 28, 1992, order was in the nature of a "legal process", especially in the absence of a governmental agency being directed either to hold money

payable to an individual or pay such money to another to satisfy an obligation.

To the extent that the appellant directs our attention to *Tennessee Department of Human Resources, ex rel. Young v. Young,* 802 S.W.2d 594 (Tenn.1990), in support of her position that SSI benefits are not subject to "legal process", we acknowledge that its holding reversed the trial court's order *garnishing* SSI benefits as violative of the federal statutory scheme codified under Subchapter XVI (SSI benefits) and Subchapter II (Social Security Act).

However, it is most important to note that in *Young,* supra, the Supreme Court of Tennessee characterized the ability of the recipient of SSI benefits to "spend these funds anyway she or he chooses". 802 S.W.2d at 599. We read this to afford an option to the SSI recipient to *pay* for (familial) obligations with resources at his or her disposal, even if they be federal funds designed solely for his or her benefit.[3] See *Rose,* supra.

At bar, Kenney testified that she received $455 a month in SSI benefits, and that another individual with whom she shares her living quarters is also the recipient of an equal amount of SSI benefits, bringing the total dollar figure of household income per month to $910.[4] And, most important, Ms. Kenney *admitted* that she "would be able to pay" child support in the amount stated provided she be allowed to make a lump sum payment "for the month". N.T. 4/28/92 at 8–9 ("[Court:] Q. Are you saying to the court that you [can] pay $20.00 times 4.3 weeks is that correct, for month, that being $80 per month, you just can't pay it per week, is that correct?

3. See 42 U.S.C. § 1383 (Statement of purpose) and Subsection (d) of Section 1383 (Prohibition on assignment of payments), which were read by the *Tennessee Department of Human Resources, ex rel. Young v. Young,* 802 S.W.2d 594 (Tenn.1990), as not allowing for an exemption to the anti-garnishment provision as exists with Social Security disability benefits. See *Rose v. Rose,* 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1981).

4. Of interest to this Court is the fact that in the appellant's "In Forma Pauperis Affidavit" of record it is revealed that she is unemployed with "debts and obligations" totalling $372–382 a month. The amount of total income entering the household ($910) would off-set expenditures sufficient to allow the appellant to live modestly.

[Appellant: ] A. Right."). Thus, we are not confronted with a situation in which payment of child support is depleting/depriving a recipient of entitlement money from social security programs for her "means of subsistence." See *Rose,* supra, and contrast with *Moore v. Sharp,* 143 A.D.2d 541, 532 N.Y.S.2d 811 (1988) and *Ex parte Griggs,* 435 So.2d 103 (Ala.Ct.App.1983).

Also, as cautioned against in *Rose,* supra, we have kept true to the dual purpose of entitlement programs by not allowing a situation in which the Social Security Administrator is a party to this suit or converting the entity into a collection agency to assure payment of child support on the part of the appellant. Rather, unlike in *Young,* supra, and *Moore,* supra, no attachment (via an order) has been issued.

The trial court looked to the appellant's SSI benefits, in conjunction with other sources of income available to the Kenney household (via her roommate), in "calculating" the appellant's support obligation. See Trial Court Opinion at 1. This is consistent with Pennsylvania's support law, which incorporates "social security benefits" and "permanent disability benefits" in the equation to arrive at "income" for purposes of child support. See 23 Pa.C.S.A. § 4302 ("Income" defined); Pa.R.Civ.P. 1910.16–5 (Amount of support which a parent should pay requires the consideration of various factors, some of which are: "other income in the household", "assets of the parties," and "other relevant and appropriate factors".).

Because we find that the appellant has the ability to pay and did not object to the fact of her obligation to pay *on a monthly basis* for child support, we do not find any preemption by federal statute disallowing the recipient of SSI benefits to satisfy a child support order. Contrast *Moore,* supra; *Ex parte Griggs,* supra (SSI benefits not exempt from child support payments; however, where beneficiary stated "he was unable to pay", it was error for the court to hold him in contempt) with *Sharlot v. Sharlot,* 110 A.D.2d 299, 494 N.Y.S.2d 238 (1985) (Consider SSI as part of the pool of assets to meet support and maintenance obligation).

244

The second issue we need to resolve concerns the appellant's complaint that the trial court's award of attorney's fees to the District Attorney's Office of Susquehanna County was erroneous.

The trial court imposed counsel fees upon the appellant's attorney on grounds that she failed to appear at the scheduled hearing, and, thus, failed to show justification for her exceptions and request for a stay and supersedeas.

In an affidavit of record, submitted after the April 28, 1992, hearing, counsel for the appellant alleged that she was "substituting for counsel who normally servic[ed] Susquehanna County" on the day in question, the hearing was not properly "calendered" in the appointment book of NPLS, and on the day of the hearing counsel was in the courthouse and, upon inquiry, was advised by the prothonotary that neither NPLS or counsel for whom she was substituting had "hearing[s] . . . scheduled. *Based upon this [mis]representation, counsel was not present in the courtroom when the [April 28, 1992,] hearing [for the appellant] was conducted.*" Paragraph 4 (Emphasis added).

■ "Generally, if the record supports a court's finding of fact that the conduct of one party was in bad faith, an award of counsel fees will not be disturbed in the absence of an abuse of discretion." *State Farm Mutual Insurance Co. v. Allen,* 375 Pa.Super. 319, 544 A.2d 491, 494 (1988); 42 Pa.C.S.A. § 2503.

■ Inasmuch as the record [5] discloses that the attorney for the appellant failed to appear because of an allegedly "unintentional act" brought on, in part, by a breakdown in the judicial machinery, and that the novelty of the issue of wheth-

5. The fact that the affidavit of counsel was filed *after* the date of the April 28, 1992, hearing is of no moment. This would appear to be the first occasion that counsel for the appellant had to respond to the trial court's entry of an award of counsel fees against her. The affidavit of counsel created a question of fact as to the reason for her absence, the truth of which is for the trial court to assess, and, if believed, would not call for the entry of attorney's fees. See *State Farm Mutual Automobile Insurance Co. v. Allen,* 375 Pa.Super. 319, 544 A.2d 491 (1988).

er SSI benefits could be used to pay child support removes it from the trial court's characterization of a "frivolous claim",[6] we deem it appropriate to remand for a hearing to decide whether the conduct (non-appearance) of counsel for the appellant was in bad faith. *Id.* If such is the finding on remand, the award of counsel fees can be reinstated. However, if the finding is to the contrary, no such award is to be imposed.

For the reasons herein stated, the order appealed is affirmed in part, reversed in part and remanded for a *procedendo.*

Order affirmed in part and reversed in part; jurisdiction is relinquished.

---

**6.** This is the second prong of the trial court's dual reasons for entering an award of attorney's fees, the first being the absence of counsel from the hearing. See note 5, supra, and the accompanying text.