THE DEPARTMENT OF PUBLIC AID *ex rel.* FELICITA LOZADA, Petitioner-Appellant, v. EDWARD RIVERA, Respondent-Appellee.

Second District   No. 2—00—0315

Opinion filed August 31, 2001.

Brenda M. Carroll, of Du Page Bar Legal Aid Service, of Wheaton, for appellant.

No brief filed for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Petitioner, Felicita Lozada, appeals a judgment ordering her to pay $94 monthly child support to respondent, Edward Rivera. Petitioner argues that (1) the trial court could not order her to pay any child support because she depends entirely on federal Supplemental Security Income (SSI), which federal law exempts from child support obligations; and (2) the award is excessive. Because we agree with petitioner's first claim of error, we vacate the judgment without deciding petitioner's second claim. We hold that federal law forbids subjecting SSI benefits to child support orders. As SSI is petitioner's sole source of income, the order in this case must be vacated outright.

The parties have never married each other. Their son was born in 1991. In 1994, an agreed order declared respondent the minor's father and ordered him to pay child support. In 1997, the minor moved in with respondent. On April 13, 1999, the circuit court terminated child support retroactive to December 21, 1997.

Petitioner petitioned for custody or, alternatively, visitation. On June 21, 1999, an agreed order gave respondent custody of the minor and allowed petitioner visitation. Respondent petitioned for child support. On December 1, 1999, the trial court entered a written order stating that petitioner currently received $500 a month in "SSD," none of which was going to support the minor. The order set temporary child support at $100 monthly and scheduled a hearing on permanent child support.

On December 29, 1999, petitioner moved to vacate the order of December 1, 1999. Her motion alleged the following. Although the December 1, 1999, order required petitioner to pay child support out of "SSD," she does not receive social security disability benefits (SSD) but SSI. The difference is crucial because SSD is financed from payroll deductions but SSI is financed out of general revenues in order to provide disabled indigents with minimally adequate incomes. SSI does not raise petitioner's income over the poverty line, and she cannot afford child support. Moreover, petitioner's SSI payments are immune under section 407 of the Social Security Act (42 U.S.C.A. § 407 (West 1991)).

On February 9, 2000, the cause proceeded to a hearing with both parties present. Petitioner testified about her income and expenses. As pertinent here, she stated that she is disabled and receives $512 monthly in SSI along with food stamps and medicaid. Petitioner lives in subsidized housing, but she does not work and has no income but SSI. Petitioner's teenage daughter (not by respondent) lives with her,

but petitioner receives no child support on her behalf. The trial court concluded that petitioner could afford to pay respondent $90 monthly support on behalf of the parties' son. The court entered an order to this effect.

Petitioner timely appealed. Respondent has not filed a brief, but we may decide the merits of this appeal without the aid of an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

We agree with petitioner that federal law prohibited the trial court from ordering petitioner to pay any child support out of her SSI allowance. Because SSI is petitioner's only regular income, we vacate the entire support award.

SSI is a national program to provide supplemental security income to "[e]very aged, blind, or disabled individual who is determined [under federal standards] to be eligible on the basis of his income and resources." 42 U.S.C.A. § 1381a (West Supp. 2001). The purpose of SSI is to provide a subsistence allowance to (among others) anyone who is unable to engage in any substantial gainful activity by reason of a disability that can be expected to result in death or has lasted or can be expected to last for a continuous period of at least 12 months. See 42 U.S.C.A. § 1382c(a)(3)(A) (West Supp. 2001); *Schweiker v. Wilson*, 450 U.S. 221, 223-24, 67 L. Ed. 2d 186, 191, 101 S. Ct. 1074, 1077 (1981).

Section 407(a) states:

> "The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." 42 U.S.C.A. § 407(a) (West 1991).

We agree with petitioner that section 407(a) preempts state child support laws and shelters any of her SSI payments from going to child support. A federal law preempts state regulation of domestic matters if "Congress has 'positively required by direct enactment' that state law be preempted." *Davis v. Office of Child Support Enforcement*, 341 Ark. 349, 354, 20 S.W.3d 273, 275 (2000), quoting *Rose v. Rose*, 481 U.S. 619, 625, 95 L. Ed. 2d 599, 607, 107 S. Ct. 2029, 2033-34 (1987). We agree with the courts that have held that section 407(a) has such preemptive force in that it prohibits state courts from ordering child support to come from SSI benefits. See *Davis*, 341 Ark. at 355, 20 S.W.2d at 276; *Becker County Human Services v. Peppel*, 493 N.W.2d 573, 576 (Minn. App. 1992); *Tennessee Department of Human Services ex rel. Young v. Young*, 802 S.W.2d 594, 597-99 (Tenn. 1990). See also

*Commonwealth ex rel. Morris v. Morris*, 984 S.W.2d 840, 842-47 (Ky. 1998) (Stephens, J., dissenting). To allow courts to order child support payments to come out of SSI benefits would seriously damage the clear and substantial interests that section 407(a) represents.

Section 407(a) states that "none of the moneys paid or payable under [SSI] shall be subject to execution, levy, attachment, garnishment, or other legal process." 42 U.S.C.A. § 407(a) (West 1991). While section 407(a) undoubtedly bars a state court from garnishing SSI benefits or ordering future benefits to be withheld (see *Morris*, 984 S.W.2d at 841; *Young*, 802 S.W.2d at 599; *Whitmore v. Kenney*, 426 Pa. Super. 233, 241, 626 A.2d 1180, 1184 (1993)), it appears to prevent more than just the use of the federal government as a collection agency for child support obligations. We determine that section 407(a) forbids ordering child support that burdens *any* SSI benefits, even those that the beneficiary has already received.

Whether section 407(a) *explicitly* forbids the child support order at issue here is a difficult question. Section 407(a) protects SSI benefits from "execution, levy, attachment, garnishment, or *other legal process*." (Emphasis added.) 42 U.S.C.A. § 407(a) (West 1991). The meaning of the emphasized language is disputed. Some opinions read it to include child support orders as such. See *Morris*, 984 S.W.2d at 845-46 (Stephens, J., dissenting) (section 407(a) phrased so as to "protect [SSI] funds from any form of involuntary transfer effectuated through the legal system"); *Becker*, 493 N.W.2d at 575 (child support order reversed; court reasoned in part that order could not be enforced by contempt proceeding, which would be "legal process" under section 407(a)).

However, another opinion appears to hold that "other legal process" includes only actions to compel the federal government to pay child support obligations out of future SSI payments. See *Whitmore*, 426 Pa. Super. at 241, 626 A.2d at 1184-85. The reasoning in *Whitmore* is complex but relies on a section of the Child Support Enforcement Act of 1975 (42 U.S.C.A. §§ 651 through 662 (West Supp. 2001)) (section 659) limiting section 407(a) by stating (as pertinent here):

"Notwithstanding any other provision of law (including section 407 of this title and section 5301 of Title 38), effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States *** to any individual *** shall be subject, in like manner and to the same extent as if the United States *** were a private person, to withholding in accordance with State law enacted pursuant to subsections (a)(1) and (b) of section 666 of this title *** and to any other legal process brought, by a State agency administering a

program under a State plan approved under this part or by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony." 42 U.S.C.A. § 659(a) (West Supp. 2001).

*For purposes of section 659*, "legal process" is defined as "any writ, order, summons, or other similar process in the nature of garnishment \*\*\* which is directed to, and the purpose of which is to compel, a governmental entity which holds moneys which are otherwise payable to an individual to make a payment from the moneys to another party in order to satisfy a legal obligation of the individual to provide child support or make alimony payments." 42 U.S.C.A. § 659(i)(5) (West Supp. 2001).

It is settled that section 659(a) does not directly expose SSI benefits, whether paid or unpaid, to "legal process," as the entitlement to SSI benefits is not based on remuneration for employment. See, *e.g.*, *Davis*, 341 Ark. at 356, 20 S.W.3d at 276-77; *Young*, 802 S.W.2d at 596-97. However, the *Whitmore* court held that the child support order there was not within section 407(a) because it did not command a federal agency to pay future SSI benefits to a third party in order to satisfy the beneficiary's child support obligation. *Whitmore*, 426 Pa. Super. at 242, 662 A.2d at 1184. Apparently, the court ruled that section 407(a) bars only the use of such "legal processes" as are covered by section 659(a) and thus, as section 659(a) refers only to orders directed against money presently held by a federal agency, section 407(a) does not bar a state court from ordering the beneficiary to expend SSI benefits he has already received. *Whitmore*, 426 Pa. Super. at 242, 626 A.2d at 1184-85.

We do not agree with *Whitmore* that section 407(a) restricts only garnishment-type proceedings against a third party. We agree with the courts that hold that SSI benefits are exempt from child support orders even after the benefits have been paid. However, we do not endorse all the reasoning of these courts.

To explain our conclusion, we examine the opinion on which *Whitmore* primarily relies, *Rose v. Rose*, 481 U.S. 619, 95 L. Ed. 2d 599, 107 S. Ct. 2029 (1987). *Rose* held that, although section 659(a) bars a state court from garnishing veterans' disability benefits that have not yet been paid, neither section 659(a) nor a specific exemption statute (38 U.S.C.A. § 3101(a) (West 1982) (now 38 U.S.C.A. § 5301(a) (West 1991))) (section 5301(a)) bars ordering the payment of child support from veterans' disability benefits that the beneficiary has received. The Court rejected several bases that the noncustodial parent (father) proffered for sheltering his disability payments from the reach of a child support order. As pertinent here, the Court ruled that (1) section

5301(a) does not shelter veterans' disability payments from child support orders; and (2) section 659(a), a sovereign immunity law, merely bars garnishing benefits still in the hands of the federal government, not reaching these funds once they are in the hands of the beneficiary.

For our purposes, it is most crucial to examine the first holding. Section 5301(a) resembles section 407(a) but applies to veterans' disability payments, not SSI benefits (see 38 U.S.C.A. § 5301(a) (West 1991)). It provides (and did then) as follows:

"(a) Payments of benefits *** made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C.A. § 5301(a) (West 1991) (formerly 38 U.S.C.A. § 3101(a) (West 1982)).

Despite such apparently all-inclusive phrasing, *Rose* held that section 5301(a) does not preempt state child support laws and does not shelter already-paid veterans' disability benefits from child support orders. Thus, in interpreting section 407(a), we are reluctant to depend on the apparent breadth of its references to benefits *"paid* or payable" and to "execution, levy, attachment, garnishment, or *other legal process."* (Emphasis added.) 42 U.S.C.A. § 407(a) (West 1991). This language has been taken to mean that section 407(a) is plainly intended to shelter SSI benefits, unpaid or paid, from child support orders. See *Morris,* 984 S.W.2d at 845-46 (Stephens, J., dissenting); *Becker,* 493 N.W.2d at 576. However, because the Supreme Court majority in *Rose* eschewed such a "plain meaning" approach to section 5301(a), we choose not to rely primarily on the language of section 407(a). Instead, we focus on the purposes of the program to which it relates—as the *Rose* Court did in analyzing section 5301(a).

The *Rose* Court observed that, generally, a state domestic relations law will not be subject to federal preemption unless it does " ' "major damage" to "clear and substantial" federal interests.' " *Rose,* 481 U.S. at 625, 95 L. Ed. 2d at 607, 107 S. Ct. at 2033-34, quoting *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 59 L. Ed. 2d 1, 11, 99 S. Ct. 802, 808 (1979), quoting *United States v. Yazell,* 382 U.S. 341, 352, 15 L. Ed. 2d 404, 410, 86 S. Ct. 500, 506 (1966). The Court concluded that neither the state law at issue, the support order at issue, nor the use of a contempt proceeding to enforce the support order did any harm to the interests underlying section 5301(a).

The Court identified the federal interests underlying section 5301(a) as (1) preventing the Veterans' Administration (VA) from being used as a collection agency; and (2) preventing the depletion of the means of subsistence of veterans who depend on veterans' disability

benefits as their main source of income. *Rose*, 481 U.S. at 630, 95 L. Ed. 2d at 610, 107 S. Ct. at 2036. The state proceeding at issue did not undermine the first of these interests because it did not turn the VA into a collection agency or, indeed, require any action by the VA. *Rose*, 481 U.S. at 630, 95 L. Ed. 2d at 610, 107 S. Ct. at 2036. Also, even though the state court proceeding required the father to pay child support out of his benefits, this did not undermine the federal interest in preserving the father's means of subsistence. The Court explained:

> "[T]he exercise of state-court jurisdiction over appellant's disability benefits [did not] deprive appellant of his means of subsistence contrary to Congress' intent, for these benefits are not provided to support appellant alone.
>
> Veterans' disability benefits *** are intended to 'provide reasonable and adequate compensation for disabled veterans *and their families*.' S. Rep. No. 98—604, p. 24 (1984) (emphasis added). *** Congress clearly intended veterans' disability benefits to be used, in part, for the support of veterans' dependents." *Rose*, 481 U.S. at 630-31, 95 L. Ed. 2d at 610-11, 107 S. Ct. at 2036.

The Court distinguished the case before it from earlier opinions sheltering certain types of federal benefits from state-court-ordered transfers. In each of the earlier cases, the crucial consideration was that Congress intended the recipient to be the exclusive beneficiary of the pertinent federal program. See *Rose*, 481 U.S. at 631-35, 95 L. Ed. 2d at 611-13, 107 S. Ct. at 2036-38 (discussing *Wissner v. Wissner*, 338 U.S. 655, 94 L. Ed. 424, 70 S. Ct. 398 (1950) (husband's life insurance policy, purchased under federal program for members of military, not subject to state community property law); *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 59 L. Ed. 2d 1, 99 S. Ct. 802 (1979) (federal benefits for railroad employees not subject to state community property law); *Ridgway v. Ridgway*, 454 U.S. 46, 70 L. Ed. 2d 39, 102 S. Ct. 49 (1981) (life insurance policy similar to that in *Wissner*; state divorce court could not order husband to designate particular beneficiaries)).

*Rose* draws a distinction between programs that are intended for the beneficiary alone and those that are intended to support the beneficiary and others. *Rose* applies this distinction to the construction of section 5301(a) and cognate statutes relating to various other federal entitlements. Therefore, we believe that this distinction must also govern the construction of section 407(a), relating similarly to SSI benefits. Apparently, the *Whitmore* court agreed with this logic but equated section 407(a) with section 5301(a), implicitly reasoning that, if section 5301(a) does not protect already-paid veterans' disability benefits, then section 407(a) does not shelter already-paid SSI benefits. Had the *Whitmore* court concluded that section 407(a) does protect

such benefits from state child support laws, it would not have needed to consider whether section 659(a) also protects SSI benefits from state laws. See *Whitmore*, 426 Pa. Super. at 241, 626 A.2d at 1184-85.

We acknowledge that there is legitimate room for disagreement on the exact rationale of *Whitmore*. The opinion may back away from the logical conclusion of its analysis when it apparently suggests that the child support order in that case was permissible only under the unusual facts there, where the SSI recipient admitted that she could afford the support payments. See *Whitmore*, 426 Pa. Super. at 242, 626 A.2d at 1185. However, *Whitmore's* precise reasoning, or even the correctness of its result, is not crucial here. What is important is to illuminate the difference we perceive between section 5301(a), which does not preempt state child support laws *vis-a-vis* veterans' disability benefits, and section 407(a), which we believe does have such preemptive effect *vis-a-vis* SSI benefits.

Were we to agree with *Whitmore's* apparent conclusion that section 407(a) is akin to section 5301(a), we would hold that petitioner's SSI benefits are as vulnerable to a child support order as were the father's veterans' benefits in *Rose*. However, we believe that section 407(a) cannot be construed in the same relatively narrow way as section 5301(a). Unlike the veterans' disability benefits at issue in *Rose*, SSI benefits are not intended to support the recipient's dependents. SSI exists not to support the recipient *and* her dependents but only to provide a subsistence income for the recipient herself. Thus, while denying section 5301(a) preemptive effect would not undermine Congress's purpose in establishing the veterans' benefits program, construing section 407(a) to make SSI benefits subject to a child support order would indeed "deprive [the recipient] of his means of subsistence *contrary to Congress' intent*" (emphasis added) (*Rose*, 481 U.S. at 630, 95 L. Ed. 2d at 610, 107 S. Ct. at 2036).

Unlike the veterans' disability benefits in *Rose*, SSI benefits are not based on prior earnings and are available only to aged, blind, or disabled people whose income is below a specified level (42 U.S.C.A. § 1382(a) (West Supp. 2001); *Wilson*, 450 U.S. at 223 n.2, 67 L. Ed. 2d at 191 n.2, 101 S. Ct. at 1077 n.2). Moreover, SSI provides only for the recipient's *subsistence*. "In short, SSI is a welfare program of last resort designed to provide only a 'subsistence allowance.' " *Lyon v. Bowen*, 802 F.2d 794, 796 (5th Cir. 1986). The structure of the program demonstrates further that the payments are intended for the recipient and not for any dependents; unlike some other federal programs, SSI nowhere provides for separate payments to dependents. See *Young*, 802 S.W.2d at 598 (contrasting SSI with Aid to Families with Dependent Children and SSD).

Congress intended SSI to provide a minimum income for the satisfaction of the recipient's needs only. It follows that a state law requiring part of a recipient's allowance to go to her dependents does severe damage to a clear and substantial federal interest. *Davis*, 341 Ark. at 357, 20 S.W.3d at 277; *Young*, 802 S.W.2d at 598. To burden SSI benefits in this way would reduce the recipient's income below what Congress has decided is the minimum she should have to satisfy her own basic needs. *Young*, 804 S.W.2d at 598. As one court has stated, SSI's purpose "is to provide the recipient with minimum necessary financial resources. [Citation.] That purpose is defeated if the resource is depleted." *In re Marriage of Langlois*, 150 Wis. 2d 101, 105-06, 441 N.W.2d 286, 288 (1989).

We hold that section 407(a) bars state courts from burdening SSI payments with child support obligations. We need not reach the related issue of whether a court may include SSI benefits in the noncustodial parent's net income for child support purposes (see 750 ILCS 5/505(a)(3) (West 2000)). See, *e.g.*, *Morris*, 984 S.W.2d at 842 (mere inclusion of SSI benefits in calculation does not conflict with federal law); *Reyes v. Gonzales*, 22 S.W.3d 516, 518 (Tex. Ct. App. 2000) (inclusion of SSI benefits in net income on which support is based violates section 407(a)). Of course, to the extent that such "factoring in" actually requires the transfer of SSI benefits, it is impermissible. In the case at bar, any child support would necessarily come from petitioner's SSI benefits. Therefore, we need not address whether a court may ever consider SSI benefits as part of a parent's "net income."

Because the child support order in this case violates federal law by burdening petitioner's entitlement to SSI benefits, it cannot stand. Therefore, the judgment of the circuit court of Du Page County is vacated.

Vacated.

HUTCHINSON, P.J., and BYRNE, J., concur.