Martha S. DAVIS *v.*
OFFICE of CHILD SUPPORT ENFORCEMENT

99-1422                                                20 S.W.3d 273

Supreme Court of Arkansas
Opinion delivered May 18, 2000

*James & Bohanan*, by: *Dawn Bohanan*, and *Barrett & Deacon*, *P.A.*, by: *D. P. Marshall Jr.*, for appellant.

*Linda O. Bowlin*, for appellee.

LAVENSKI R. SMITH, Justice. Appellant Martha S. Davis petitions this court to review a court of appeals decision affirming a Randolf County child-support order. The chancellor ordered Davis to pay $70.00 per month in child support to her ex-husband for their two children. Davis's sole source of income is a monthly Supplemental Security Income ("SSI") check from the federal government in the amount of $494. Davis argues that federal law both expressly and impliedly preempts any Arkansas law that might impose a child-support obligation on her SSI benefits. We reverse.

### Facts

Davis and her ex-husband Randy Davis ("Randy") were married on January 31, 1981. The Davises had two children during the course of their marriage. In March 1988, Randy sued for divorce in Randolph County Chancery Court. Davis answered and counterclaimed for divorce. The couple ultimately reached a property-settlement agreement in the matter. In the property settlement, the parties agreed that Randy would have custody of the two children. They also agreed that Davis would not pay child support because she was unemployed. The chancery court entered the divorce decree on April 10, 1989.

Nine years later, on April 17, 1998, the Office of Child Support Enforcement ("OCSE") intervened in the matter. In the interim Randy assigned his rights to OCSE to pursue child support from Davis. In its petition to set child support, OCSE requested that Davis pay current and past support, secure and maintain health insurance for the children, and be responsible for one-half of the medical costs not paid by insurance. Davis answered the petition on May 8, 1998, and alleged that she was disabled due to paranoid

schizophrenia and only identified her sole income source as $494 per month in SSI benefits.

Chancellor Tom Hilburn held a brief hearing on June 16, 1998. Counsel for the OCSE questioned Davis about the use of her monthly SSI check. Davis testified that $400 of her monthly check is paid to her sister, with whom she lives, for rent, groceries, and cigarettes, while the remaining $94 is used for medication for her mental illness. No other witnesses were called nor other evidence submitted.

At the hearing's conclusion, Davis's attorney sought and received permission to brief the issue of SSI's availability for child-support awards. In her brief, Davis noted the federal government's purposes in creating the SSI program. She pointed out that Congress intended SSI to provide a minimum level of subsistence income to recipients. Davis also argued that federal law prohibits the garnishment, levy, execution on, or other legal process against benefits. Davis noted that Arkansas does not specifically require such a taking of SSI benefits, and that most other states prohibit the use of SSI benefits in child-support cases. OCSE responded by arguing that this Court, in a per curiam dated September 25, 1997, ordered that child-support payments could come out of "any form of payment" to an individual. OCSE argued that because SSI is "income" due Davis, it qualifies as a "form of payment" and should be subject to child-support withholding. OCSE argued that Davis uses her money for food, shelter, and luxuries such as cigarettes, but has failed to support her children. OCSE further argued that it is not trying to "execute, levy, attach, or garnish" Davis's SSI, noting that 42 U.S.C. §§ 407(a) and 1383(d)(1) do not allow income withholding on SSI benefits, but that it is merely trying to set support payments from the "income" Davis receives.

The chancellor filed his order on August 4, 1998, requiring Davis to pay $70 per month in support, specifically noting that Davis smokes perhaps one pack of cigarettes a day. The court found that $70 was reasonable, and that $36 per year should be paid in administrative fees. The court further found that Davis should pay $35.75 in filing fees. Davis filed her notice of appeal on August 28, 1998.

On November 17, 1999, the court of appeals affirmed the chancellor's Order of Support. Specifically, the court of appeals determined that income is "any form of payment, periodic or otherwise, due to an individual, regardless of source" citing this court's per curiam order, which is now Arkansas Supreme Court Administrative Order Number 10. The court of appeals thus reasoned that SSI is income subject to child-support payments. The opinion compared SSI to veteran's disability benefits, *see Belue v. Belue*, 38 Ark. App. 81, 828 S.W.2d 855 (1992), and social security disability benefits, *see Kimbrell v. Kimbrell*, 47 Ark. App. 56, 884 S.W.2d 268 (1994), which are subject to child-support awards. The appellate court thus struck a delicate balance between a child's need for support and a parent's need for a subsistence level of income in the child's favor. Additionally, the court of appeals determined that federal law does not preempt state law in domestic-relations matters including child support taken from federal SSI benefits. Davis petitioned this court for review of this case, and the parties filed supplemental briefs for our consideration.

*Standard of Review*

■ Upon a petition for review, we consider the case as though it were originally filed in this court. *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999); *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999); *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998); *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998). We have held many times that although we review chancery cases de novo on the record, we will not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Slaton v. Slaton*, 336 Ark. 211, 983 S.W.2d 951 (1999). Further, in reviewing a chancery court's findings, we give due deference to the chancellor's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996); *Riddick v. Street*, 313 Ark. 706, 858 S.W.2d 62 (1993); *see also, Anderson v. Holliday*, 65 Ark. App. 165, 956 S.W.2d 173 (1999); *Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997).

## Federal Preemption

In her petition for review, Davis argues that federal law expressly and impliedly preempts any Arkansas law which might impose a child-support obligation on Davis's SSI benefits. Davis further argues that allowing a chancellor discretion over SSI benefits in child-support proceedings undermines the federal law, and the chancellor's decision undercuts needed national uniformity in the law of child-support obligations. OCSE, in turn, argues that federal law does not preempt state law on this issue, and that Congress's intent on this issue is ambiguous and unclear. Furthermore, OCSE again makes a distinction between allowing SSI benefits to be "garnished" and ordering that the parent pay child support out of those benefits without actual "garnishment," reasoning that federal law does not prohibit such orders. Upon review, we hold that federal law does prohibit state court ordered child-support payments exclusively from SSI benefits.

■ As a rule, the federal government leaves domestic relations matters within the exclusive province of the states. *See Rose v. Rose*, 481 U.S. 619 (1987). However, the Supreme Court in *Rose* acknowledged that in some "rare" occasions preemption does apply. Specifically, preemption is justified when Congress has "positively required by direct enactment" that state law be preempted. *Rose*, 481 U.S. at 625 (citing *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979)). The *Rose* court noted that "before a state law governing domestic relations will be overridden, it "must do 'major damage' to 'clear and substantial' federal interests." *Rose*, 481 U.S. at 625 (citing *Hisquierdo*, 439 U.S. at 581, quoting *United States v. Yazell*, 382 U.S. 341, 352 (1966)).

■■ Although there is no direct enactment exclusive to SSI exempting it from state child-support orders, there is specific, clear federal law limiting state court authority generally with respect to SSI and Social Security Disability ("SSD") payments. Congress expressly protected Social Security benefits from legal process in 42 U.S.C. § 407 and § 1383(d)(1). Section 407 states,

§ 407. Assignment; amendment of section

(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing

under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

(b) No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

(c) Nothing in this section shall be construed to prohibit withholding taxes from any benefit under this subchapter, if such withholding is done pursuant to a request made in accordance with section 3402(p)(1) of the Internal Revenue Code of 1986 [§26 U.S.C.A. 3402] by the person entitled to such benefit or such person's representative payee.

This section protects SSI and SSD benefits against transfer or assignment in law or equity and states that they are not subject to "execution, levy, attachment, garnishment, or *other legal process.*" (Emphasis added.). This would include state child-support withholding orders as the OCSE concedes. However, since the enactment of § 407, Congress has carved out a limited exception for child-support purposes in 2 U.S.C. § 659. There, Congress consented to income withholding, garnishment, and similar proceedings for enforcement of child-support and alimony obligations from federal moneys payable based on *"remuneration from employment."* That statute states:

§ 659. Consent by the United States to income withholding, garnishment, and similar proceedings for enforcement of child support and alimony obligations

(a) Consent to support enforcement

Notwithstanding any other provision of law (including section 407 of this title and section 5301 of Title 38), effective January 1, 1975, moneys *(the entitlement to which is based upon remuneration for employment)* due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the Armed Forces of the United States, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to withholding in accordance with State law enacted pursuant to subsections (a)(1) and (b) of section 666 of this title and regulations of the Secretary under such

subsections, and to any other legal process brought, by a State agency administering a program under a State plan approved under this part or by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony. (Emphasis added.)

Notably, the exception created by 2 U.S.C. § 659 applies only to moneys "the entitlement to which is based upon remuneration for employment." This exception could not apply to federal SSI benefits. SSI benefits are not remuneration for any past or present employment. No premiums, deposits, or other payments have been paid to qualify for them. Put simply, SSI is federal welfare for the poorest of the nation's citizens.

The Supreme Court explained the purpose of SSI benefits in *Schweiker v. Wilson*, 450 U.S. 221 (1981). There, the court stated:

> In October 1972, Congress amended the Social Security Act (Act) to create the federal Supplemental Security Income (SSI) program, effective January 1, 1974. 86 Stat. 1465, 42 U.S.C. § 1381 et seq. This program was intended "[t]o assist those who cannot work because of age, blindness, or disability," S. Rep. No. 92-1230, p. 4 (1972), by "set[ting] a Federal guaranteed minimum income level for aged, blind, and disabled persons," *id.*, at 12.
>
> The SSI program provides a subsistence allowance, under federal standards, to the Nation's needy aged, blind, and disabled. Included within the category of "disabled" under the program are all those "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 1614 (a) (3) (A) of the Act, 42 U.S.C. § 1382c(a)(3)(A).

■ SSI, like SSD, requires that an applicant file for benefits and prove that he or she is disabled from performing any "substantial gainful activity" or sustained work for pay. However, SSI and SSD differ substantially. Under SSD, the applicant seeks "insurance" benefits based upon payments withheld from his paychecks. To qualify, the applicant must have paid into the program at least five out of the prior ten years, or twenty out of forty quarters. SSI recipients, however, either never paid this "premium" or never paid enough into the system to qualify for SSD. In other words, the

benefits an SSI recipient  receives are not based on how much he paid into the system, but instead how much he or she needs to maintain "a Federal guaranteed minimum income level for aged, blind, and disabled persons." *Schweiker, supra.*  Currently, for Davis, that amount is set at $494.00 monthly.

██ ██ Although distinct, SSD and SSI can interrelate. This interplay illustrates the Congressional intent underlying SSI. For instance, if a disabled worker draws $300 per month in SSD based on their employment history, their monthly income is $194 below the Federal guaranteed minimum income level for aged, blind and disabled persons. Based upon  the amount that the person paid into the Social Security system during the years they worked, he or she may also be entitled to an additional $194 to raise him or her to the "Federal guaranteed minimum income level" for a disabled person. Maintenance of this minimum income level is thus the fundamental purpose of SSI.  As stated in the federal regulations governing SSI,

> The basic purpose underlying the supplemental security income program is to assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level. The supplemental security income program replaces the financial assistance programs for the aged, blind, and disabled in the 50 States and the District of Columbia for which grants were made under the Social Security Act.  Payments are financed from the general funds of the United States Treasury.  20 C.F.R. § 416.110.

Given its purposes, we find that subjecting SSI payments to state court child-support orders would do "major damage" to a clear and substantial federal interest."[1] Therefore, we hold that the sovereign immunity exception created by § 659 does not apply to SSI benefits. *See,* e.g., *Tennessee Department of Human Services, ex rel. Young v. Young,* 802 S.W.2d 594 (Tenn. 1990).

In Administrative Order of the Court Number 10, we defined "income" as:

---

[1]  We note that the responsibility of a parent to provide for the support of their minor children is as the supreme court has stated, "a moral imperative." Certainly, parents can do by choice what the law cannot command. In the case of disabled parents living exclusively on subsistence income, with rare exception, there is little choice.

Income means any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, worker's compensation, disability, payments pursuant to a pension or retirement program, and interest less proper deductions for:

1. Federal and state income tax;

2. Withholding for Social Security (FICA), Medicare, and railroad retirement;

3. Medical insurance paid for dependant children, and

4. Presently paid support for other dependents by Court order.

This definition is intentionally broad and designed to encompass the widest range of potential income sources for the support of minor children. The trial court and appellate court interpreted "income" under Order 10 to include SSI payments from the federal government.

■ We hold, however, that although SSI comes within the definition of income for child-support purposes, it is not subject to state court jurisdiction. Congress has made no sovereign immunity exception for non–remunerative federal benefits such as SSI. Hence, those benefits remain free from "execution, levy, attachment, garnishment, or other legal process." We thus join the majority of the states that have addressed this issue and hold that Arkansas courts cannot order child-support payments based upon income from federal SSI disability benefits.[2]

Reversed and remanded.

ARNOLD, C.J., dissenting.

W.H. "DUB" ARNOLD, Chief Justice, dissenting. I disagree with the majority in holding that SSI payments are not income for

---

[2] Thirty-eight states exempt SSI benefits from inclusion in a calculation of gross income for child support purposes. Those states are: California, Georgia, Iowa, Nebraska, New Mexico, Wisconsin, Rhode Island, Alabama, Alaska, Arizona, Colorado, Connecticut, Delaware, Hawaii, Indiana, Kansas, Louisiana, Maine, Maryland, Michigan, Missouri, Montana, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, Wyoming.

purposes of child support under the Supreme Court's Administrative Order No. 10. Section 2 of the order defines income as follows: "Income means any form of payment, periodic or otherwise, due to an individual, *regardless of source*, including wages, salaries, commissions, bonuses, Workers Compensation, disability, payments pursuant to a pension or retirement program, and interest less proper reductions . . . ." [Emphasis added.]

The facts in this case support that the appellant receives $494.00 per month in SSI benefits. I acknowledge that this is a meager sum of money that the appellant is receiving. However, this does not excuse her from her obligation to support her two children. She gave birth to these children, and she has a duty to love, nurture, and support them. The trial judge recognized this duty of support and took into consideration the limited funds in setting the proper amount of child support. Based upon the child support charts, one receiving $490.00 per month should pay $130.00 per month for support of two children. The trial judge reduced support to $70.00 per month. The facts are undisputed that the appellant smokes approximately one pack of cigarettes per day. The cost of her smoking habit alone would provide the support set by the trial judge. Is this too much to ask?

The majority has carved out an exception in defining income; SSI benefits are exempt. With this decision, the *appellant* has food, clothing, shelter, and continues the pleasure of smoking a pack of cigarettes each day, while her two children receive *nothing* — zero — not even a penny. Who will support them? If this court felt that $70.00 per month was too much for her to pay, why not seventy *cents*, at the very least? A mother and father should pay *something*.

The majority holds that SSI benefits are exempt from use as child support and, in doing so, reasons that it is following the majority of the states that have addressed this issue; they then cite thirty-eight states that exempt SSI benefits. This does not impress me. Why shouldn't Arkansas follow the other eleven states that are rightly requiring mothers and fathers to support their children, regardless of the source of their income?

My conscience would never allow me to say that a parent who has income from *any* source should not support their children. This is wrong, and no excuse is acceptable under any circumstance. I

would, therefore, affirm the trial judge and the Court of Appeals. For these reasons, I respectfully dissent.