842 A.2d 186 (2004)
367 N.J. Super. 29
Carolyn BURNS and the Camden County Board of Social Services, Plaintiffs-Respondents,
v.
Benjamin EDWARDS, Jr., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 2, 2004.
Decided February 17, 2004.
*188 Community Health Law Project, attorneys for appellant (Roberta Luchansky, on the brief).
No briefs were filed by respondents.
Before Judges HAVEY, FALL and PARRILLO.
*187 The opinion of the court was delivered by FALL, J.A.D.
This appeal raises the issue of whether federal Supplemental Security Income (SSI) benefits received by a disabled parent may be utilized as income when calculating a child support obligation when such benefits are the sole source of support of that parent, and income cannot otherwise be imputed to the parent. We conclude that they cannot, and now reverse that portion of an order entered in the Family Part on December 20, 2002, assessing a child support obligation against defendant, Benjamin Edwards, Jr., a recipient of SSI benefits by reason of his psychiatric disability. The relevant factual and procedural history follows.
Plaintiff Carolyn Burns and defendant are the parents of one minor child. Plaintiff has custody of the child and was herself a recipient of means-tested public assistance benefits on behalf of the child, *189 payable through plaintiff Camden County Board of Social Services (CCBSS). Although not relevant to our analysis, the record on appeal does not reflect whether Ms. Burns had been collecting Aid to Families with Dependent Children (AFDC), pursuant to N.J.S.A. 44:10-3.5 (repealed by L. 1997, c. 38, § 17), or Temporary Assistance for Needy Families (TANF), pursuant to the block grant program enacted by Congress in 1996 to replace AFDC. See 42 U.S.C.A. §§ 601-608.[1]
Defendant is an age forty-one disabled person diagnosed with schizophrenia and is a recipient of SSI, a means-tested federal disability program administered by the Social Security Administration. See 42 U.S.C.A. §§ 1381-1385; 20 C.F.R. § 416.501. Defendant's sole source of income is his SSI benefit, and the record is devoid of any evidence that defendant has an earning capacity from which he could derive any additional income; rather, the record supports the conclusion that defendant has no ability to earn income.
Defendant receives a monthly SSI benefit of $576.25, and has been placed in a boarding home under a statutory and regulatory scheme for disabled persons that has resulted in the payment of the SSI benefit directly to the eligible boarding home, less a Personal Needs Allowance (PNA) that is provided directly to the SSI-eligible recipient. N.J.S.A. 44:7-87(h); N.J.A.C. 5:27-11.6. Here, $495.75 of defendant's monthly SSI benefit is paid to the boarding home and defendant receives a monthly PNA of $80.50. Defendant is also a recipient of Medicaid benefits. Defendant attends a mental health counseling program, known as DayBreak Treatment Care, five days each week and is under the care of Dr. Bellias, a psychiatrist. An August 13, 2002 letter to the Family Part from DayBreak Treatment Care states, inter alia, that defendant "has been diagnosed with Schizophrenia and is currently unable to be employed."
CCBSS, on behalf of plaintiff Carolyn Burns, filed a non-dissolution complaint against defendant in the Family Part, seeking the establishment of a child support obligation.[2] An order was entered on December 14, 1998, requiring defendant to pay a weekly child support obligation in the amount of $15, plus $10 per week toward an undisclosed amount of arrears. That order inaccurately reflected defendant's income source as "SSD." As a result of application of the cost-of-living adjustment to child support orders required by Rule 5:6B, an order was entered on December 26, 2000, increasing defendant's weekly child support obligation to the sum of $16, plus $10 per week toward payment of arrears, effective as of December 23, 2000.
On November 12, 2002, the Community Health Law Project, on behalf of defendant, filed a motion in the Family Part seeking an order terminating defendant's child support obligation and reducing the periodic payment toward liquidation of accumulated arrears. The position taken on defendant's behalf was that SSI benefits cannot be utilized as a basis for establishment of a child support obligation, nor can they be garnished or otherwise attached.
In his supporting certification, defendant stated that the support arrears were approximately $4,000 and that he was willing to liquidate same at the payment rate of *190 $20 per month. Defendant's motion was also supported by a case information statement (CIS), listing no assets or income other than his SSI benefits.
In response to the motion, CCBSS submitted a letter to the Family Part dated November 13, 2002, that only addressed the issue of arrears, stating in pertinent part:
The only interest of the Camden County Board of Social Services is in an arrears of $42.00 plus a conditional arrears of $2,858.00 in accordance with the Probation Department obligation inquiry attached. The current arrears order is $10.00 per week and, the Camden County Board of Social Services defers to the discretion of the court as to whether the amount should be reduced pursuant to defendant's Motion.
Since the only interest expressed by CCBSS related to arrears, we infer that plaintiff Carolyn Burns was no longer a recipient of public assistance benefits at the time defendant made his motion. Plaintiff, who was served with defendant's motion, did not respond to the motion nor appear at the motion hearing.
A hearing was held in the Family Part on December 20, 2002. The motion judge rejected defendant's argument that his SSI benefits could not be considered when determining his child support obligation. However, the court agreed that a reduction was warranted, and an order was entered on that date, reducing defendant's child support obligation to the sum of $40 per month, effective November 12, 2002, plus payment of $10 each month toward liquidation of the arrears. The judge agreed with the contention of defendant's counsel that 42 U.S.C.A. § 407(a) prohibited enforcement of the child support obligation through a garnishment or execution against defendant's SSI benefits but ruled, "I'm not taking the action against SSI, I have no right to execute on it, I'm simply saying he has to pay the support."
On appeal, defendant presents the following argument for our consideration:
POINT I
THE LOWER COURT ERRED IN ORDERING DEFENDANT TO PAY CHILD SUPPORT AS FEDERAL LAW, 42 U.S.C. § 407 PROVIDES FOR THE INALIENABILITY OF SUPPLEMENTAL SECURITY INCOME AND THUS FORBIDS ANY STATE FROM ORDERING CHILD SUPPORT TO BE PAID WHERE SSI IS THE RECIPIENT'S ONLY INCOME.
We begin our analysis with a discussion addressing the nature of defendant's SSI benefit and the differences between "means-tested" and "non-means-tested" government benefits relevant to the establishment, modification and enforcement of a child support obligation. SSI, which is a means-tested benefit, differs substantially from Social Security Disability (SSD), which is a non-means-tested benefit program.
A government benefit is "means-tested" if eligibility for the benefit, or its amount, is determined on the basis of the income or resources of the recipient. Riggs v. Riggs, 261 Neb. 344, 622 N.W.2d 861, 866-67 (2001); Forbes v. Forbes, 610 N.E.2d 885, 887-88 (Ind.Ct.App.1993). See Pressler, Current N.J. Court Rules, Appendix IX-B to Rule 5:6A, "Use Of The Child Support Guidelines," "Types of Income Excluded from Gross Income" (2004) (excluding means-tested income, including SSI benefits, from the definition of "gross income"); 8 C.F.R. § 213a.1 (defining a means-tested benefit as a public benefit "funded in whole or in part by funds provided by the Federal Government that the Federal agency administering the Federal *191 funds has determined to be a Federal means-tested public benefit under the Personal Responsibility and Work Opportunities Reconciliation Act of 1996, Public Law 104-193"). See also Hartman v. Hartman, 261 Neb. 359, 622 N.W.2d 871, 877 (2001) (noting that "[t]he Social Security Administration has stated that as to the programs it administers, for purposes of the federal Personal Responsibility and Work Reconciliation Act of 1996, only `supplemental security income benefits' are `"Federal means-tested public benefits."'" (quoting 62 Fed.Reg. 45, 284 (August 26, 1997)). SSI and other means-tested government benefits are financed from general revenues in order to provide disabled indigents with minimally adequate incomes, whereas SSD benefits are financed from payroll deductions.
SSD payments represent money which an employee has earned during his or her employment and also that which his or her employer has paid for the employee's benefit into a common trust fund under the Social Security Act. See 42 U.S.C.A. § 405. SSD "payments are for the purpose of replacing income lost because of the employee's inability to work upon becoming disabled." Lightel v. Myers, 791 So.2d 955, 959 (Ala.Civ.App. 2001). Stated another way, SSD payments are a substitute for earned income and are thereby non-means-tested benefits.
Unlike SSD payments, SSI benefits are not a substitute for lost income due to disability; rather, they are a supplement to the recipient's income. The purpose of SSI benefits is to assure that the income of a recipient is maintained at a level viewed by Congress as the minimum necessary for subsistence. Schweiker v. Wilson, 450 U.S. 221, 223, 101 S.Ct. 1074, 1077, 67 L.Ed.2d 186, 191 (1981); Davis v. Office of Child Support Enforcement, 341 Ark. 349, 20 S.W.3d 273, 277 (2000); In re Marriage of Benson, 495 N.W.2d 777, 781 (Iowa Ct.App.1992).
The common qualifying requirements for both SSI and SSD is an applicant's disability, consisting of "a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[,]" and that the recipient is unable to engage in "substantial gainful activity," 20 C.F.R. § 416.905(a), defined as being able to do significant and productive physical or mental duties, done or intended, for pay or profit. 20 C.F.R. § 416.910. Generally, if a person can earn more than $700 per month, he or she can engage in "substantial gainful activity." Angela F. Epps, To Pay Or Not To Pay, That Is The Question: Should SSI Recipients Be Exempt From Child Support Obligations?, 34 Rutgers L.J. 63, 66 (Fall 2002); 20 C.F.R. § 416.974(b). SSI eligibility further requires that the applicant have no more than $2,000 in financial resources. 20 C.F.R. § 416.1205(c).
Thereby, SSI benefits are payable only when the disabled person's income and resources are insufficient to provide for that individual's basic needs. Benson, supra, 495 N.W.2d at 781. Moreover, the SSI benefit will be reduced by one-third if the recipient is living in another person's residence and is receiving both food and shelter. 20 C.F.R. § 416.1131(a).
SSD is payable when the applicant meets the disability requirement, plus additional criteria in the form of minimum lifetime earnings with contributions into the Social Security Retirement System. See 20 C.F.R. § 404.315(a)(1). The minor dependents of an SSD recipient also receive a monthly benefit, payable to the custodial parent(s). See 20 C.F.R. §§ 404.330 to .331, .350. A disabled person *192 ineligible for SSD is eligible for SSI payments under the applicable means test. However, the SSI program does not provide a benefit for the dependents of the SSI recipient, unless the dependents themselves independently meet the SSI eligibility criteria.
These differences between the SSD and SSI programs are critical to our analysis because non-means-tested benefits, such as SSD, may be utilized as income when calculating child support in accordance with the child support guidelines and payments made to the dependents of the SSD recipient reduce the amount of the basic child support obligation to be apportioned between the parties. See Pressler, supra, Appendix IX-B to Rule 5:6A, "Use of the Child Support Guidelines," "Line Instructions for the Sole-Parenting Worksheet," "Lines 1 through 5Determining Income," "Sources of [Gross] Income," subparagraph m. (including SSD benefits within the definition of gross income); Pressler, supra, Appendix IX-A to Rule 5:6A, "Considerations In Use Of Child Support Guidelines," ¶ 10c, "Government Benefits Paid to or for Children" (requiring the subtraction of the non-means-tested dependent government benefit received by the child from the basic child support award prior to allocation of that amount between the parents). See also Herd v. Herd, 307 N.J.Super. 501, 503-04, 704 A.2d 1340 (App.Div.1998) (requiring trial courts to consider SSD payments received by children, attributable to a parent's Social Security disability status, when calculating a child support obligation).
Benefits received through the SSI program are exempt from attachment, garnishment, levy, execution or any other legal process. 42 U.S.C.A. § 407(a); 20 C.F.R. § 581.104. Specifically, SSI cannot be garnished or attached for child support or alimony. 42 U.S.C.A. § 659(a). Conversely, Congress has waived the sovereign immunity created by 42 U.S.C.A. § 407(a) with respect to SSD payments and permits enforcement of child support or alimony obligations through execution against SSD payments. See 42 U.S.C.A. § 659(a).
The principle of child support is engrained into our common law, statutory, and rule-based jurisprudence. One of the fundamental concepts in American society is that parents are expected to support their children until they are emancipated, regardless of whether the children live with one, both, or neither parent. Dunbar v. Dunbar, 190 U.S. 340, 351, 23 S.Ct. 757, 761, 47 L.Ed. 1084 (1903); Cumberland County Bd. of Soc. Servs. v. W.J.P., 333 N.J.Super. 362, 365, 755 A.2d 1171 (App. Div.2000) (noting that "[a]t common law, parents had an absolute duty to support their children"). In Monmouth County Div. of Soc. Servs. v. G.D.M., 308 N.J.Super. 83, 87, 705 A.2d 408 (Ch.Div.1997), the court summarized the evolution of this fundamental requirement, as follows:
"The duty of parents to provide for the maintenance of their children is a principle of natural law." Greenspan v. Slate, 12 N.J. 426, 430, 97 A.2d 390 (1953), citing 1 W. Blackstone, Commentaries on the Laws of England (1765), 435-36.
In keeping with this, New Jersey Courts have long held that a parent is bound to provide a child with necessities. See Tomkins v. Tomkins, 11 N.J. Eq. 512, 517-18 (Ch. 1858); Kopack v. Polzer, 5 N.J.Super. 114, 117, 68 A.2d 484 (App.Div.1949), aff'd, 4 N.J. 327, 328, 72 A.2d 869 (1950); Greenspan, supra, at 432, 97 A.2d 390; Grotsky v. Grotsky, 58 N.J. 354, 356-57, 277 A.2d 535 (1971); Ionno v. Ionno, 148 N.J.Super. 259, 261, 372 A.2d 624 (App.Div.1977); Lynn v. Lynn, 165 N.J.Super. 328, 342-43, 398 A.2d 141 (App.Div.), certif. denied, 81 *193 N.J. 52, 404 A.2d 1152 (1979). Today, "[a]s a general rule, a parent is obliged to contribute to the basic support needs of an unemancipated child to the extent of the parent's financial ability irrespective of the quality of the relationship between them." Martinetti v. Hickman, 261 N.J.Super. 508, 513, 619 A.2d 599 (App.Div.1993). Thus, the hopeful common law rule noted in Greenspan, above, thereby has become a realistic equitable principle as well.
[Footnotes omitted.]
The issue of child support has been extensively regulated by the federal government. Professor Epps has concisely summarized that regulation and its relationship to public assistance programs as follows:
In 1975 Congress created the Child Support Enforcement Program ("CSP"). The goals of this program were to increase payment and collection of child support. In 1996, efforts to accomplish these goals intensified with the passage of the Personal Responsibility and Work Opportunities Reconciliation Act ("PRWORA"). PRWORA created a new program known as Temporary Assistance for Needy Families ("TANF") to replace Aid to Families with Dependent Children ("AFDC"). TANF is funded by a block grant given to the state. It is not an entitlement program as AFDC had been. It provides a monthly benefit to families but also requires various work related activities. The goal of TANF is to get families off public assistance and to help them to become self-sufficient. Eligibility lasts a maximum of five years.
The number of families on welfare was viewed as a direct consequence of the non-custodial parent's failure to pay child support. Therefore, PRWORA included amendments to the CSP geared toward increasing the effectiveness of child support collection efforts. To be eligible for TANF, a recipient must assist the state in efforts to collect support from the non-custodial parent.... The state must comply with the requirements [of TANF] or risk losing the federal block grant that supports TANF and the federal funding used to assist in child support collection efforts. There is also a financial incentive for states related to the amount of support they collect.
Each state is required to have a plan for child support collection. The plan must include strong measures to collect child support from the non-custodial parent....
* * * *
The state plan must also provide for the establishment of child support guidelines that "[t]ake into consideration all earnings and income of the non-custodial parent."
[Epps, supra, 34 Rutgers L.J. at 72-74 (quoting 45 C.F.R. § 302.56(c)(1); footnotes omitted).]
We recognize the basic obligation of parents to support their children is deeply rooted in our jurisprudence, as well as the intent of Congress to require parents to support their children in order to lessen the need for public assistance. However, it is undeniable that American society is also confronted with the problem of disabled parents who are unable to support themselves, much less their children. See Rachael K. House, note, Awarding Child Support Against The Impoverished Parent: Straying From Statutory Guidelines And Using SSI In Setting The Amount, 83 Ky. L.J. 681, 681-82 (1994-95).
A state court confronted with the issue of whether SSI benefits are to be considered as income when calculating a parent's child support obligation faces the dilemma of reconciling the federal mandate of *194 PRWORA to maximize child support establishment and collection based upon consideration of all sources of income, with the clear federal intent of Congress to provide a recipient of SSI benefits a minimum level of income necessary for subsistence. Schweiker, supra, 450 U.S. at 223, 101 S.Ct. at 1077, 67 L.Ed.2d at 191.
Here, the uncontroverted evidence supports the conclusion that defendant is totally disabled with a schizophrenic disorder and indisputably indigent, surviving solely on SSI benefits directed at providing him with the legislatively-established minimum level of subsistence. The intent of the child-support framework to ensure that parents support their children has no application to those parents whose sole source of income is SSI, and where such parents have no ability to generate any additional income. To require SSI benefits to be diverted under such circumstances for child-support purposes would undercut the purpose of Congress in enacting the SSI program and hardly satisfies the intent of PRWORA to remove and keep individuals off the welfare rolls in any meaningful way.[3] Moreover, implicit in the SSI program is the intention that these payments are for the benefit of the recipient, rather than the recipient and his or her dependents. See Tennessee Dep't of Human Servs. ex rel. Young v. Young, 802 S.W.2d 594, 598 (Tenn.1990) (noting that any reduction of SSI benefits would necessarily reduce the recipient's income below the Congressional-guaranteed minimum level for subsistence). If Congress had intended that SSI benefits be applied toward the support of a recipient's dependents, it could have so stated or provided a dependent benefit as it did with the SSD program.
The United States Supreme Court has not considered whether a state is precluded from using SSI benefits as income in child support calculations. Epps, supra, 34 Rutgers L.J. at 91. However, in addressing that issue, the overwhelming majority of courts in other jurisdictions have ruled that a disabled parent cannot be ordered to pay child support when the sole parental income consists of his or her SSI benefits, and that parent is unable to generate any additional income. See, e.g., Davis, supra, 20 S.W.3d at 278 (ruling that federal law prohibits state court-ordered child support payments exclusively from SSI benefits, and noting that thirty-eight states have exempted SSI benefits from inclusion in a calculation of gross income for child support purposes); Marrocco v. Giardino, 255 Conn. 617, 767 A.2d 720, 728-29 (2001) (noting that both SSI and state supplementation benefits are awarded on the basis of need and are designed to protect the individual recipients from poverty and that requiring child support to be paid therefrom would reduce the recipient's income below that necessary to protect him or her from poverty in contravention to the legislative policy that drives these programs); Lee v. Lee, 859 So.2d 408, 409-10 (Miss.Ct.App.2003) (recognizing that a child-support award cannot be entered where the sole income of a parent is SSI benefits, but affirming order assessing child support against the SSI recipient where the trial court found recipient had ability to generate other income); Rose on Behalf of Clancy v. Moody, 83 N.Y.2d 65, 607 N.Y.S.2d 906, 629 N.E.2d 378, 381 (1993) (requiring a parent, whose sole source of income is means-tested income, to pay a minimum amount of child support "is not only unjust and inappropriate, it is *195 a legal pretense"), cert. denied sub nom., Attorney General of New York v. Moody, 511 U.S. 1084, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994); (c.f., Hurd v. Hurd, 303 A.D.2d 928, 757 N.Y.S.2d 170, 171 (2003) (ruling that child support can be ordered against an SSI recipient if the hearing examiner concludes that the recipient has the capacity to generate additional income)); Reyes v. Gonzales, 22 S.W.3d 516, 519-20 (Tex. Ct.App.2000) (father's SSI benefits cannot be considered in calculation of father's net resources for purposes of determining father's child support obligation), cert. denied, 533 U.S. 929, 121 S.Ct. 2550, 150 L.Ed.2d 717 (2001). See also Davie v. Office of Child Support Enforcement, 349 Ark. 187, 76 S.W.3d 873, 875 (2002); Cox v. Cox, 654 N.E.2d 275, 277 (Ind.Ct.App. 1995); Department of Public Aid ex rel. Lozada v. Rivera, 324 Ill.App.3d 476, 258 Ill.Dec. 165, 755 N.E.2d 548, 550 (2001); Becker County Human Servs. v. Peppel, 493 N.W.2d 573, 576 (Minn.Ct.App.1992);; Young, supra, 802 S.W.2d at 597; Langlois v. Langlois, 150 Wis.2d 101, 441 N.W.2d 286, 287-88 (App.1989).
A minority of jurisdictions have interpreted the anti-garnishment provisions contained in 42 U.S.C.A. § 407(a) as only precluding use of the federal government as a collection agency for child support obligations with respect to SSI benefits, but not as preventing an award of child support against a parent whose only source of support is his SSI benefits. See, e.g., Griggs v. Griggs, 435 So.2d 103, 105 (Ala.Civ.Ct.App.1983) (concluding that SSI benefits were aimed to protect the recipient's family as well as the recipient and were therefore available for consideration in the calculation of child support); Commonwealth ex rel. Morris v. Morris, 984 S.W.2d 840, 841-42 (Ky.1999) (in a four-to-three decision, holding that state statute permitting courts to include SSI benefits when calculating child support obligations was not preempted by 42 U.S.C.A. § 407(a)); Whitmore v. Kenney, 426 Pa.Super. 233, 626 A.2d 1180, 1184-85 (1993) (finding that 42 U.S.C.A. § 407(a) only precludes actions to compel the federal government to pay child support obligations from future SSI benefits and not from considering SSI benefits when calculating child support), appeal denied, 537 Pa. 621, 641 A.2d 587 (Pa.1994).
The Pennsylvania court's reasoning in Whitmore, supra, 626 A.2d at 1182-85, warrants discussion. There, in concluding that SSI benefits are available for consideration in the establishment of a child support obligation, the court relied upon 42 U.S.C.A. § 659(a), a section of the Child Support Enforcement Act of 1975, 42 U.S.C.A. §§ 651 through 662, and the Supreme Court's opinion in Rose v. Rose, 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987).
In Whitmore, supra, the court concluded that 42 U.S.C.A. § 659(a) limits the application of 42 U.S.C.A. § 407(a) to garnishment applications to compel the federal government to pay child support obligations out of future SSI benefit payments. 626 A.2d at 1184-85. 42 U.S.C.A. § 659(a), entitled "Consent to support enforcement," provides as follows:
Notwithstanding any other provision of law (including section 407 of this title and section 5301 of Title 38), effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the Armed Forces of the United States, shall be subject, in like manner and to the same extent as if the United States or the District of *196 Columbia were a private person, to withholding in accordance with State law enacted pursuant to subsections (a)(1) and (b) of section 666 of this title and regulations of the Secretary under such subsections, and to any other legal process brought, by a State agency administering a program under a State plan approved under this part or by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony.
In Lozada, supra, 258 Ill.Dec. 165, 755 N.E.2d at 551, the Illinois Court of Appeals analyzed this reasoning of Whitmore and concluded it was misplaced, stating that "[i]t is settled that section 659(a) does not directly expose SSI benefits, whether paid or unpaid, to `legal process,' as the entitlement to SSI benefits is not based on remuneration for employment." Ibid. (citing to Davis, supra, 20 S.W.3d at 276-77, and Young, supra, 802 S.W.2d at 596-97). We agree. Clearly, 42 U.S.C.A. § 659(a) exempts non-means-tested federal benefits, "the entitlement to which is based upon remuneration for employment," from execution or garnishment, and retains the sovereign immunity established by 42 U.S.C.A. § 407(a) as to SSI benefits.
In Rose, supra, the Supreme Court ruled that a Tennessee statute that permitted the payment of child support from veteran's disability benefits was not preempted by federal law. 481 U.S. at 636, 107 S.Ct. at 2039, 95 L.Ed.2d at 614. The Whitmore court's analogous reliance upon Rose with respect to SSI benefits, however, is misplaced
because veterans' disability benefits are more similar to [SSD] benefits than SSI benefits. Both [SSD] benefits and veterans' benefits are received for time on the job. SSI benefits, by contrast, are awarded solely on the basis of need. Additionally, veterans' benefits are intended to "provide reasonable and adequate compensation for disabled veterans and their families," Rose, [supra,] 481 U.S. at 630, 107 S.Ct. at 2036, [95 L.Ed.2d at 610], while SSI benefits are awarded to protect only the recipient.
[Becker, supra, 493 N.W.2d at 576; see also Lozada, supra, 258 Ill.Dec. 165, 755 N.E.2d at 553.]
We are persuaded by the reasoning of those jurisdictions that have held that SSI benefits cannot be included in the child-support calculus. 42 U.S.C.A. § 407(a) and the Congressional intent in creating the program preclude the inclusion of such benefits in establishing, modifying or collecting child support when the sole income of the parent consists of those SSI benefits and the parent otherwise has no ability to generate additional income. To permit our courts to base child support payments solely upon a parent's receipt of SSI benefits would be contrary to the clear intent of the SSI program.
Our conclusions are supported by an analysis of New Jersey's child support guidelines. In adopting the guidelines, the Court articulated their purpose, as follows:
The premise of these guidelines is that (1) child support is a continuous duty of both parents, (2) children are entitled to share in the current income of both parents, and (3) children should not be the economic victims of divorce or out-of-wedlock birth.
[Pressler, Current N.J. Court Rules, Appendix IX-A to Rule 5:6A, "Considerations In Use Of Child Support Guidelines," ¶ 1, "Philosophy of the Child Support Guidelines" (2004).]
The child support guidelines must be used as in all actions in which child support is being determined, including those involving public assistance. Pressler, supra, Appendix IX-A to Rule *197 5:6A, at ¶ 2, "Use of the Child Support Guidelines As a Rebuttable Presumption." There is a rebuttable presumption that the child support award calculated in accordance with the guidelines is "the correct amount of child support unless a party proves to the court that circumstances exist that make a guidelines-based award inappropriate in a specific case." Ibid.
The guidelines also specify certain factors that may require an adjustment to the guidelines-calculated basic child support, including the receipt of non-means-tested government benefits by or for the benefit of a child, as follows:
c. Government Benefits Paid to or for ChildrenIn some cases, government benefits may be received by or for a child based on a parent's earnings record, disability, or retirement (e.g., Black Lung, Veteran's Disability, Social Security). Such payments are meant to replace the lost earnings of the parent and are paid in addition to the worker's or member's benefits (i.e., payments to family members do not reduce the member's benefits). A parent may also receive other non-means-tested government benefits that are meant to reduce the cost of the child such as adoption subsidies (N.J.A.C. 10:121-2). Supplemental Security Income (SSI) and welfare payments received for or on behalf of a child are not included in this category since they supplement parental income based on financial need. If non-means-tested benefits are paid to or for a dependent child for whom support is being determined, the benefits must be deducted from the basic support obligation.... The deduction is provided because the receipt of such benefits reduces the parents' contributions toward the child's living expenses (i.e., the marginal cost of the child). If the benefits received by the child are greater than the total support obligation (i.e., the amount of the obligation after deducting the benefits is zero), no support award should be ordered while the child is receiving the benefits. The benefits will continue to be paid by the government agency to the custodial parent in lieu of child support. If the total obligation is greater than the benefits received by the child, the non-custodial parent's income share of the residual amount (after deducting the benefits) is the support award to be paid to the custodial parent. Government benefits paid to or for a child that reduce benefits paid to a non-custodial parent (an apportionment) should not be deducted from the basic child support award (i.e., the apportionment represents a payment toward the support order similar to garnishment).
[Pressler, supra, Appendix IX-A, at ¶ 10, "Adjustments to the Support Obligation" (2004).]
Government benefits paid to or for the child are to be reflected in the child-support calculation on Line 12 of the Sole Parenting Worksheet, and on Line 11 on the Shared Parenting Worksheet. Pressler, supra, Appendix IX-C and Appendix IX-D to Rule 5:6A. The instructions for Line 12 on the Sole Parenting Worksheet provide, as follows:
ENTER government benefits received by the child on behalf of either parent on Line 12.
If a child is receiving government benefits based on either parent's earning record, disability or retirement, the amount of those benefits must be deducted from the total support award (regardless of the effect of the child's benefit payments on benefits paid to the parent). Such benefits include, but are not limited to: Social Security Retirement or Disability, Black Lung, and Veteran's Administration benefits. Also *198 included are non-means-tested government benefits meant to offset the cost of the child such as adoption subsidies (N.J.A.C. 10:121-2). SSI, public assistance (TANF), and other means-tested benefits are not government benefits based on a parent's earnings record, disability or retirement and should not be included on Line 12. If the government benefit received by the child is greater than the total support award (i.e., the amount of the total support award after deducting the government benefit is zero or less), the amount of the government benefit that is being paid to or for the child represents the support award. In such cases, the support award should be made payable directly to the obligee (i.e. from the government agency to the obligee; not through Probation). If the government benefit is less than the total support obligation, it shall continue to be paid directly to the obligee and the residual amount shall be paid through Probation.
Note that these benefits are not included in the gross income of the recipient parent.
[Pressler, supra, Appendix IX-B, "Line 12Deducting Government Benefits Paid to or for the Child".]
The instructions for completion of Line 11 on the Shared Parenting Worksheet are substantially similar. Ibid.
The guidelines also recognize that extremely low parental income situations can make the "Schedule of Child Support Awards" set forth in Pressler, supra, Appendix IX-F to Rule 5:6A, inapplicable. Accordingly, the guidelines provide, as follows:
a. Obligors With Net Income Less Than the U.S. Poverty Guideline. If an obligor's net income, after deducting that person's share of the total support award, is less than 105% of the U.S. poverty guideline for one person (net income of $181 per week as of February 7, 2003 or as published annually in the Federal Register), the court shall carefully review the obligor's income and living expenses to determine the maximum amount of child support that can reasonably be ordered without denying the obligor the means of self-support at a minimum subsistence level. If an obligee's income is less than 105% of the poverty guideline, no self-support reserve adjustment shall be made regardless of the obligor's income. When assessing whether an obligee has sufficient net income to permit the application of the self-support reserve for an obligor, the court may consider the effect of the obligee's share of the child support obligation (note that this amount is not calculated on either worksheet). Thus, at the court's discretion, the obligor self-support reserve may not be applied if the obligee's net income minus the obligee's child support obligation is less than 105% of the poverty guideline for one person. In all cases, a fixed dollar amount shall be ordered to establish the principle of the parent's support obligation and to provide a basis for an upward modification should the obligor's income increase in the future. In these circumstances, the support award should be between $5.00 per week and the support amount at $170 combined net weekly income for the appropriate number of children.
[Pressler, supra, Appendix IX-A to Rule 5:6A, at ¶ 20, "Extreme Parental Income Situations".]
Appendix IX-B to Rule 5:6A provides detailed instructions for determining the gross and net income of parents. Lines 1 through 5 on both the "Sole Parenting" and "Shared Parenting" worksheets are identical, as are the instructions for insertion *199 of income information on those lines. Ibid. Essentially, the instructions call for insertion of the "Gross Taxable Income" for each party on Line 1, reduced by mandatory retirement contributions (Line 1a). Where alimony is paid by a parent, it is deducted from his or her gross taxable income (Line 1b), and it is added to the gross taxable income of the recipient (Line 1c). Ibid. After those calculations, if any, the result is reflected on Line 2 as the "Adjusted Gross Taxable Income" of each party, and then adjusted by deducting federal, state and local income tax withholding (Line 2a), prior child support orders from past relationships (Line 2b), mandatory union dues (Line 2c), and by the other-dependent deduction (Line 2d), if applicable. Ibid. The result is reflected on Line 3 as each party's "Net Taxable Income." Ibid. Any "Non-Taxable Income" (Line 4) of each party is added to the net taxable income to reflect, on Line 5, each party's "Net Income." Ibid. As noted, non-means-tested government benefits paid to or on behalf of the child are reflected on Line 12 of the Sole Parenting Worksheet, Appendix IX-C, or Line 11 of the Shared Parenting Worksheet, Appendix IX-D, and are deducted from the calculated basic child support amount prior to allocating child support between the parties.
The guidelines define "gross income" as all earned and unearned income that is recurring or will increase the income available to the recipient over an extended period of time. When determining whether an income source should be included in the child support guidelines calculation, the court should consider if it would have been available to pay expenses related to the child if the family would have remained intact or would have formed and how long that source would have been available to pay those expenses.
[Pressler, supra, Appendix IX-B, "Line Instructions for the Sole-Parenting Worksheet," "Lines 1 through 5Determining Income."]
The guidelines also provide a non-exclusive list of income sources that constitute "gross income," which includes "m. disability grants or payments (including Social Security disability)[.]" Ibid. Means-tested income, specifically including SSI, is listed under "Types of Income Excluded from Gross Income." Ibid. The guidelines further state that the term "gross income" encompasses both "Taxable and Non-Taxable Income." Ibid.
Accordingly, the child support guidelines specifically exempt SSI benefits and other means-tested income from being listed either as "gross income" on Line 1 of either worksheet, or as "non-taxable income" on Line 4 thereof. Additionally, SSI payments and other means-tested government benefits received by a parent cannot be listed as "government benefits for the child" on either Line 12 of the Sole Parenting Worksheet or on line 11 of the Shared Parenting Worksheet because, at least here, they are not paid to or on behalf of the child, and do not otherwise meet the criteria set forth in the guidelines. See Pressler, supra, Appendix IX-A at ¶ 10c, "Government Benefits Paid to or for Children."
Here, because SSI benefits cannot be utilized as income in a guidelines-based analysis, and since defendant has no other income, application of the child support guidelines would result in a zero award. We also conclude that the provisions in the guidelines that call for establishment of a fixed-dollar child support award "to establish the principle of the parent's support obligation and to provide a basis for an upward modification should the obligor's income increase in the future[,]" Pressler, *200 supra, Appendix IX-A, at ¶ 20, should not be applied in circumstances where the sole income of the non-custodial parent or parent of alternate residence is his or her receipt of SSI benefits, and where that parent has no ability to earn additional income. We hasten to add that the guidelines provide detailed criteria for imputation of income to parents. See Pressler, supra, Appendix IX-A to Rule 5:6A, at ¶ 12, "Imputing Income to Parents." We concur with the rulings of the courts in Lee, supra, 859 So.2d at 409-10, and Hurd, supra, 757 N.Y.S.2d at 171, that a child support order may be entered against a parent who is an SSI recipient where the court concludes that the parent is earning or has the ability to earn additional income.
That portion of the December 20, 2002 order assessing a child support obligation against defendant is reversed. That portion of the order requiring defendant to pay the sum of $10 each month toward liquidation of those child support arrears that had accumulated prior to November 12, 2002, is affirmed, but is modified to reflect defendant's request that he be permitted to liquidate those arrears at the rate of $20 per month.[4]
Affirmed in part as modified, reversed in part, and remanded for entry of an order consistent with this opinion.
NOTES
[1] Indeed, Ms. Burns may have collected AFDC initially, and then TANF; both are means-tested government benefits.
[2] The record on appeal does not disclose when this complaint was filed. However, the docket number indicates it was filed between July 1, 1994 and June 30, 1995, with an initial child support order entered thereafter.
[3] Here, the child support obligation established by the December 20, 2002 order equates to approximately $9.23 per week.
[4] N.J.S.A. 2A:17-56.23a and 42 U.S.C.A. § 666(a)(9)(C) prohibit retroactive modification of child support orders except with respect to the period during which there is a pending application for modification, but only from the date the notice of motion was filed.