# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2794-22

D.W.A.,

    Plaintiff-Respondent,

v.

A.L.H.,

    Defendant-Appellant.

_____

Submitted March 11, 2024 – Decided March 20, 2024

Before Judges Mawla and Chase.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-0426-04.

A.L.H., appellant pro se.

Respondent has not filed a brief.

PER CURIAM

Defendant A.L.H.[1] appeals from September 1, 2022 and April 3, 2023 orders, which enforced his obligation to pay child support arrears to plaintiff D.W.A. We affirm.

Defendant is the father of two children he had with plaintiff, both of whom are now adults and emancipated. This child support dispute arises from a final restraining order (FRO), entered in favor of plaintiff against defendant in 2004. Pursuant to the FRO, defendant was obligated to pay child support, but instead amassed an arrearage exceeding $166,000 by the time the court heard the matter in September 2022.

The September hearing pertained to plaintiff's appeal from a child support hearing officer (CSHO) determination regarding defendant's obligation to pay the arrears. Both parties testified and the court obtained the following salient facts from defendant. He testified he had completed one year of college and worked in information technology (IT) for thirty years. Defendant told the court he worked two IT jobs at a combined rate of eighty-five dollars per hour, which totaled $110,000 in yearly earnings. He had been out of work for two months, because there was a workforce reduction in one job and the other was a temporary position. He testified he had been conducting a job search by "go[ing]

---

[1] We use initials to protect plaintiff's confidentiality. R. 1:38-3(d)(10).

A-2794-22

online a lot," attending a job fair three months prior, and "putting . . . [his] name out there, . . . [and] calling up former colleagues."

Although defendant's arrearage was substantial, he admitted he had not made any payments, except by way of an involuntary levy in 2021. He conceded he owed the money and had not been meeting his obligation. However, he managed to pay his rent for seven years and sold a car to meet his expenses, but not the arrearage obligation. Defendant testified he was fifty-nine years old and not disabled. He claimed he had filed a motion to modify the arrears.

The court entered the September 1, 2022 order requiring defendant to: pay $1,000 by September 15, 2022 and $1,000 by October 13, 2022; pay $476 per week and stay current thereafter; and provide probation with proof of ten job searches per week. A bench warrant would issue if defendant failed to comply with the order. Defendant did not appeal from the September order.

In March 2023, probation moved to enforce litigant's rights because defendant failed to comply with the September order. The CSHO found defendant was willfully noncompliant with the September order and sought defendant's incarceration. The parties appeared and testified before a different judge. Defendant's arrears totaled more than $164,000.

The judge noted that rather than pay the $476 per week, defendant was "paying, at his prerogative, between [thirty] and [fifty] dollars per week." Further, defendant's probation officer had asked him to participate in a judiciary-sponsored employment program geared to job placement in the IT field, but defendant did not comply. Defendant claimed he could not travel from his home in Hudson County to Middlesex County to attend job fairs.

Defendant reiterated he had once been making "something like $95,000 a year," but was "not earning anything now." When the judge asked defendant how he was surviving, he advised he "had some money [set] aside." Defendant said his last full-time job was in 2018 and his last employment of any type was in 2019. Probation advised the judge defendant's job searches were vague. Plaintiff noted the coercive measures the court took in its September order had worked to an extent, because defendant made both $1,000 lump sum arrears payments. Defendant claimed he filed a motion to modify the arrearage amount in December 2022. However, the court had no record of the motion.

Based on the facts presented, the judge found defendant had the ability to pay $2,500 within two weeks and make another $2,500 payment two weeks thereafter. The judge ordered defendant to continue providing proof of ten job searches per week and furnish proof of more detailed job searches. Defendant

was ordered to comply with the probation officer's instructions "regarding job fairs and other employment assistance." The judge did not incarcerate defendant.

## I.

On appeal, defendant claims the court intimidated him at the September 2022 hearing and never determined the issue of indigency or his ability to pay. He alleges the court never considered his tax returns, pay stubs, or W2s. Defendant argues the court misinterpreted his earnings based on his testimony and imputed an income to him that he did not earn. He reiterates he filed a motion to modify his obligations in December 2022 that was never heard.

Defendant claims the court repeated the same errors when it entered the April 2023 order. Moreover, he was prejudiced by the CSHO's finding he was willfully not complying with the September 2022 order. Defendant claims he was unable to comply with the September 2022 order because of the COVID-19 pandemic and lock-down restrictions. Furthermore, the court ignored his job search efforts.

Defendant blames plaintiff for orchestrating the proceedings. He claims she sat on her rights for twenty years, the children are emancipated, and she now wants a windfall. He alleges the court misapplied the law because it was

required to weigh the statutory child support factors, N.J.S.A. 2A:34-23(a), before enforcing the arrears, and failed to make those findings as required by Rule 1:7-4. Defendant claims the bench warrant requirement was "an egregious abuse of discretion as it is too excessive, when there are other remedies available, including termination of the child support arrearages due to [p]laintiff's bad faith abuse" of the legal process.

## II.

The general rule is that "findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015). Therefore, we review a child support determination for an abuse of discretion. Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012). "If consistent with the law, [the decision] will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Ibid. (quoting Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001)). However, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

A-2794-22

III.

At the outset, we decline to consider defendant's arguments pertaining to the September 2022 order because he did not file a timely appeal from that order. R. 2:4-1(a). The September order, along with the court's finding regarding defendant's arrears, earnings, and ability to pay, is final.

IV.

"The obligation to provide child support 'is engrained into our common law, statutory, and rule-based jurisprudence.'" Colca v. Anson, 413 N.J. Super. 405, 414 (App. Div. 2010) (quoting Burns v. Edwards, 367 N.J. Super. 29, 39 (App. Div. 2004)). For that reason, "enforcing the parental duty to support children is 'an inherent part of the "best interests of the child" rubric which underlies our family courts.'" Ibid. (quoting Monmouth Cnty. Div. of Soc. Servs. for D.M. v. G.D.M., 308 N.J. Super. 83, 88 (Ch. Div. 1997)).

It is well-established "the enforcement, collection, [and] modification . . . of unpaid arrearages in . . . child support payments are matters addressed to the sound discretion of the court." In re Rogiers, 396 N.J. Super. 317, 327 (App. Div. 2007) (quoting Mastropole v. Mastropole, 181 N.J. Super. 130, 141 (App. Div. 1981)). Likewise, the "[i]mputation of income is a discretionary matter not capable of precise or exact determination[,] but rather require[s] a trial judge to

realistically appraise capacity to earn and job availability." Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (second alteration in original) (quoting Gnall v. Gnall, 432 N.J. Super. 129, 158 (App. Div. 2013), rev'd on other grounds, 222 N.J. 414 (2015)).

Having considered the record pursuant to these principles, we reject defendant's arguments the April 2023 order was the product of either an abuse of discretion or a misapplication of the law. Initially, defendant's assertion the court was required to apply the N.J.S.A. 2A:34-23(a) factors in deciding the arrearage issue is misplaced. That statute governs the calculation of child support, not the setting of an arrearage payback amount.

We also reject the claim the court erred when it enforced his obligation to pay the arrears. The record reveals defendant made no meaningful effort to pay child support, let alone the arrears, and only made limited payments because of the coercive effect of the enforcement orders entered by the court. Defendant claims the court failed to consider his income documentation, yet the record does not show he offered it to the court and no such documentation is contained in the appellate record. The record is also devoid of the job searches he claims the CSHO misrepresented to the court. Rather, the record shows the court discerned defendant's income and ability to pay, based on his sworn testimony and

representations he had earned between $95,000 and $110,000. Therefore, the substantial, credible evidence in the record showed defendant was not indigent, had the ability to pay, and willfully refused to do so.

Defendant's claim he filed a motion to modify the arrears is unavailing. He never told the court why he was entitled to a modification and how it would impact the arrears that had accumulated. Defendant's appellate appendix contains only the first page of the modification application bearing the court's received and filed stamp dated December 28, 2022. However, beyond completing the caption and heading, the document is blank and provides no explanation of defendant's reasons for modifying the arrears.

We categorically reject defendant's argument that plaintiff was not entitled to the arrears because she sat on her rights. A review of the record shows she was anything but complacent and expressed frustration because defendant had refused to pay support while she was raising the children. It is inconsequential that the children are now emancipated.

"Laches is an equitable doctrine which penalizes knowing inaction by a party with a legal right from enforcing that right after passage of such a period of time that prejudice has resulted to the other [party] so that it would be

inequitable to enforce the right." L.V. v. R.S., 347 N.J. Super. 33, 39 (App. Div. 2002).  Notably,

> [t]he length of delay, reasons for delay, and changing conditions of either or both parties during the delay are the most important factors that a court considers and weighs . . . .  It is because the central issue is whether it is inequitable to permit the claim to be enforced that generally the change in condition or relations of the parties coupled with the passage of time becomes the primary determinant . . . .  Inequity more often than not, will turn on whether a party has been misled to [their] harm by the delay.
>
> [Ibid. (quoting Lavin v. Bd. of Educ. of Hackensack, 90 N.J. 145, 152-53 (1982)).]

"The application of laches to matters of parent-child relationships have been carefully circumscribed." Id. at 41.

Laches clearly does not apply here because there is no evidence plaintiff acquiesced in the enforcement of the child support arrears or that defendant was "misled to his harm by the delay." Id. at 39.  As we noted, it was plaintiff who appealed from the CSHO's arrearage payback determination in September 2022.  When the court asked her why she was appealing, she said:  "I've been at this for numerous years with . . . defendant.  He was ordered to do job searches before and didn't comply . . . .  I just don't have any faith that he's going to do what is recommended."

We also decline to apply laches here because it is fundamental that child support belongs to the child and cannot be waived by a parent. Martinetti v. Hickman, 261 N.J. Super. 508, 512 (App. Div. 1993). Therefore, even if plaintiff were negligent in enforcing defendant's arrearage obligation, "there is no basis to impute to a child the custodial parent's negligence, purposeful delay[,] or obstinacy so as to vitiate the child's independent right of support from a natural parent." L.V., 347 N.J. Super. at 40.

Finally, it is a bedrock principle of our law that both parents bear the obligation for support of their children. Pascale v. Pascale, 140 N.J. 583, 593 (1995). Another basic principle is that one who seeks equity must do equity and come to court with clean hands. Marino v. Marino, 200 N.J. 315, 345 (2009).

> The doctrine of unclean hands embraces the principle that a court should not grant equitable relief to a party who is a wrongdoer with respect to the subject matter of the suit. It calls for the exercise of careful and just discretion in denying remedies where a suitor is guilty of bad faith, fraud[,] or unconscionable acts in the underlying transaction.
>
> [Pellitteri v. Pellitteri, 266 N.J. Super. 56, 65 (App. Div. 1993) (citation omitted).]

Defendant's refusal to pay child support, except by means of coercive enforcement, convinces us he acted in bad faith and had unclean hands. As a result of his conduct, his children entered adulthood without the benefit of his

11

support.  Although defendant's appearances at the September 2022 and April 2023 hearings were not pursuant to an arrest warrant, neither the legal nor the equitable arguments defendant raises on appeal favor relieving him from the obligation to comply with the April 3, 2023 order.

To the extent we have not addressed an argument raised on the appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION