# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1275-23

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

E.H.,[1]

     Defendant,

and

E.K.,

     Defendant-Appellant,

_____

IN THE MATTER OF J.K. and
D.K., minors.

_____

Submitted February 10, 2025 – Decided March 17, 2025

---

[1] We use initials and pseudonyms to protect the identities of the children and parties and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

Before Judges Gummer, Berdote Byrne, and Jacobs.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FN-14-0019-22.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Bruce P. Lee, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Jessica A. Prentice, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Julie E. Goldstein, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant E.K. ("Eric") appeals the Family Part's finding that he abused or neglected his biological children, J.K. ("Jacob") and D.K. ("David"), pursuant to N.J.S.A. 9:6-8.21(c)(4)(b). He argues he could not be found to have abused or neglected his children because he did not have physical custody of them during the time the incidents giving rise to the allegations had occurred and because he enjoyed only supervised visitation pursuant to court order. We disagree and conclude Eric was a "parent" who owed Jacob and David a legal duty of care pursuant to the plain language of N.J.S.A. 9:6-8.21(a). Further, we

2

A-1275-23

conclude the record contains substantial, credible evidence to support the trial court's finding by a preponderance of the evidence Eric abused or neglected his children. Accordingly, we affirm.

I.

Eric and E.K. ("Ellen") are Jacob and David's biological parents[2] and have had several previous interactions with the Division of Child Protection and Permanency, all stemming from their respective struggles with substance use.

In May 2019, the Division responded to a referral from police reporting concerns about Eric's substance use at a hotel where he and Ellen were residing with Jacob and David. The investigation concluded with both Ellen and Eric being arrested and the Division assuming care and supervision of Jacob and David, then three years old and five months old, respectively. The Division's findings of abuse or neglect as to Eric in this instance were substantiated. Months later, in August 2019, the Division received another referral reporting Eric and Ellen were sleeping with Jacob and David in a different hotel lobby after their credit card had been declined. The Division conducted an emergency

---

[2] Ellen has two additional children, J.H. and C.H. Eric has two additional children, G.K. and Z.K. Neither Ellen nor Eric have physical custody of these additional children, and none of these additional children are parties to this litigation.

A-1275-23

Dodd removal[3] of Jacob and David, which was upheld by the Family Part, and placed the boys with their maternal grandparents. Eric was referred to an intensive outpatient treatment program, where he repeatedly tested positive for methamphetamines. The Division's finding of abuse and neglect as to Eric in this instance was substantiated because he had violated a court order requiring his contact with the children be supervised by the Division due to his "extensive history of substance abuse" and because he continued to test positive for illicit substances and refuse treatment.

On January 27, 2021, the Family Part issued an order terminating the Title Nine litigation and issued a separate order approving the application of maternal grandmother B.G. ("Beatrice") for custody of Jacob and David in the non-dissolution docket. These orders provided that Beatrice would share legal custody of Jacob and David with Ellen and Eric, while retaining sole physical custody. The January 27, 2021 orders outlined Eric and Ellen's ongoing requirements for substance-abuse treatment and evaluations, required all of Eric and Ellen's parenting time be supervised by Beatrice or a supervisor of her

---

[3] See N.J. Div. of Youth & Fam. Servs. v. N.S., 412 N.J. Super. 593, 609 n.2 (App. Div. 2010) ("A 'Dodd removal' refers to the emergency removal of a child from the home without a court order, pursuant to the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82.").

A-1275-23

choosing, and required Beatrice to inform any supervisor about the parents' history of substance use and their supervision requirements. Neither parent was permitted to supervise the other, even if one parent was to complete all recommended substance-abuse treatment.

These orders also required the Division to be notified of any application to change custody or supervision and concluded with Beatrice's, Ellen's, and Eric's acknowledgment "that violation of these terms may result in the Division becoming re-involved, a finding of abuse/neglect being made, removal of the children from the home and placement of the children in another resource home."

On September 1, 2021, a police officer with the Mansfield Township Police Department responded to a hotel at approximately 6:30 a.m. after a hotel guest reported two young children, later identified as Jacob and David, wandering the hallways alone. When the officer arrived, the children appeared distraught and were screaming. The officer conducted a protective sweep of the children's hotel room, which was registered in Eric's name, but could not locate either of the children's parents. The protective sweep revealed several uncapped hypodermic needles in the hotel bathroom within arm's reach of the children,

with one on the floor and one on the sink. This discovery led the police to contact the Division.

Ellen returned to the hotel approximately an hour after the police had arrived. She told police she had left the children with Eric so she and a friend could check nearby dumpsters for saleable items to buy the children breakfast from McDonald's. She also told police that Eric had been in the hotel room with the children when she left. She consented to the search of two bags, one of which she said belonged to Eric. In the bag Ellen claimed belonged to Eric, police found her wallet with credit cards both in her and Eric's names, three needles, a few small yellow pills, and a glass jar with a dropper containing an unknown liquid.

Eric never appeared at the hotel during the police response, and police were unsuccessful in contacting him. However, one of the hotel's guests showed the officer a text message, purportedly from Eric, asking her to look after Jacob and David ("Resident Text Message"). The Resident Text Message was photographed as part of the case file, but the officer never verified whether the text had been sent by Eric.

By the time Division workers arrived at the hotel, Beatrice had picked up the children and brought them to her home. Ellen informed a Division worker

Eric had been residing at the hotel since August 19, 2021, and that she and the children had been staying with him since August 29, 2021. Ellen also stated a friend, C.M. ("Cassidy"), was supervising her contact with the children during their entire stay, and Beatrice was aware and approved of Cassidy as a supervisor. Ellen then told the Division worker she had left the room that morning while Cassidy remained with Eric to supervise him with the children, but when she returned the police were present and Cassidy and Eric were gone. Neither police nor Division workers encountered anyone identified as Cassidy at the scene.

Later that morning, two Division caseworkers arrived at Beatrice's house. Although Beatrice was initially reluctant to answer questions, she eventually admitted she did not know the exact date when the children left her home, how they were transported, or who was supervising their parents' contact with them. As a result, the Division conducted an emergency Dodd removal of the children from Beatrice's home. The caseworker noted the children had few belongings in Beatrice's home, other than outgrown clothes.

One of the caseworkers spoke with Jacob about what had happened earlier that day. Jacob told her that he and David had been living with their parents in different hotel rooms, also indicating he and David occasionally stayed with

7

Beatrice, but not consistently. Jacob also said there were many times when he would wake up and his parents were not there, leaving him and his brother alone. Jacob recounted when he woke up that morning, his mother had gone to McDonald's and his father had left as well, although he was unsure where his father had gone. Jacob said upon discovering his parents' absence, he and David went into the hallway looking for their parents and began to cry.

Jacob further told the caseworker his parents took "medicine" but said he would not tell the name of the "medicine" because his parents would be very upset with him. He said his parents kept the "medicine" in a glass bottle, poured it into a different glass, and took the "medicine" all day to make them feel better. Jacob said he knew his parents were sick because they did not sleep much and his father would "sleepwalk," stumble, and sometimes fall down. Jacob also revealed he once observed blood dripping down his father's arm.

The same day, one of the caseworkers met with Ellen at the police station. Ellen reiterated that Eric had been residing at the hotel since August 19, 2021, and stated the two of them alternated paying for the room at different times. She admitted to leaving the children alone in the hotel with Eric and acknowledged they had violated the January 27, 2021 court orders by doing so. Ellen continued to state Cassidy was supervising the children on a sporadic basis while they

8

stayed at the hotel but admitted Cassidy "wasn't supervising [them] like the court order" required. Ellen stated the children did not live at the hotel, but when asked about the children's belongings, she said the family had been "living out of suitcases" for the past year-and-a-half.

Soon after, the caseworker spoke with Cassidy by phone and in-person. Cassidy stated she had not been in contact with the family since 2018 and denied any involvement with the family as a supervisor. Ultimately, Ellen admitted she had lied about Cassidy and confessed Cassidy was not supervising her or Eric at all.

On September 3, 2021, the Division filed a complaint for custody of Jacob and David, which the Family Part granted. At the conclusion of the Division's investigation, the Division substantiated Ellen, Eric, and Beatrice for abuse or neglect of David and Jacob.

A fact-finding hearing before the Family Part was held on November 29, 2022. At the hearing, the Division presented testimony from the responding officer and the Division caseworker. During the officer's testimony, Ellen became visibly distressed, and her attorney notified the court she wished to enter a stipulation. Ellen's stipulation, which was read into the record, states:

> [Ellen] violated [the] January 27, 2021[] order under
> FD-14-189-21 that required her and [Eric's] parenting

time with both minor children, [Jacob] and [David], to be supervised due to concerns with substance use. [Ellen] had the children in her care without supervision and also left the children in the care of [Eric] who was also without supervision.

The court admitted the officer's investigation report into evidence pursuant to the business-records hearsay exception but excluded all embedded hearsay, including the Resident Text Message described in the officer's testimony. The court also entered into evidence: the Division's screening summaries and investigation summaries from May 2019, August 2019, and September 2021, excluding impermissible hearsay; several orders from the family's prior FN docket; and the January 27, 2021 orders.

In its January 5, 2023 oral opinion, the trial court summarized the facts and found the officer's and the Division caseworker's testimony credible. The court found, by a preponderance of the evidence, Jacob and David were abused or neglected children as defined in N.J.S.A. 9:6-8.21(c)(4)(b). In support of its conclusions, the trial court observed Eric's absence from the hotel when the Division and police arrived did not absolve him of responsibility because there was substantial evidence in the record demonstrating he had left the children alone in the hotel room. Jacob stated Eric had been there that morning, and

10

Ellen corroborated that statement when she told the caseworker she had left the children with Eric.

While her lies about other aspects of the situation—specifically the presence of Cassidy as a supervisor—tended to undermine her credibility, the trial court found Ellen's account was consistent with Jacob's statements about staying at the hotel with both parents and being left unattended with David. The court found Jacob's statements, while not independently sufficient to support a finding, were corroborated by Ellen's statements, the fact the hotel room was registered in Eric's name, and the officer's testimony. The court thereby concluded the totality of the evidence established Eric was present at the hotel with the children alone before he left the children.

The court also determined Eric's knowledge and participation in violating the January 27, 2021 orders established abuse and neglect, and the substance-abuse concerns prompting the supervision requirements were "borne out as necessary," considering the hypodermic needles found in the children's room. The court noted the presence of needles in the hotel room indicated Eric and Ellen remained engaged in intravenous drug use and amounted to actions "beyond gross negligence."

11

The Family Part entered an order on March 28, 2023, memorializing its January 5, 2023 oral opinion and finding Eric had abused or neglected Jacob and David pursuant to N.J.S.A. 9:6-8.21(c)(4)(b). Eric filed this untimely appeal of the trial court's abuse or neglect finding on December 29, 2023,[4] and filed an amended appeal on January 17, 2024.

## II.

"[We] will not disturb a family court's abuse or neglect findings as long as they are 'supported by adequate, substantial, and credible evidence in the record.'" N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 505 (App. Div. 2016) (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)). "This deferential standard of review is appropriate because the Family Part judges are presumed to have a 'specialized knowledge and experience in matters involving parental relationships and the best interests of children.'" N.J. Div. of Child Prot. & Permanency v. S.K., 456 N.J. Super. 245, 261 (App. Div. 2018) (quoting N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 427 (2012)); see also N.J. Div. of Child Prot. & Permanency v. D.A., 477 N.J. Super. 63, 80 (App. Div. 2023) (affording deference to the trial

---

[4] See R. 2:4-1(a). We also note Eric was made aware of the proper time to file his appeal when the trial court rendered its January 5, 2023 oral decision.

court's factual findings because it "has the opportunity to make first-hand credibility judgments about witnesses who appear on the stand; it has a feel for the case that can never be realized by a review of the cold record." (quoting N.J. Div. of Youth and Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008))).

Accordingly, "we do not disturb [the Family Part's] findings unless those findings are 'so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" T.B. v. I.W., 479 N.J. Super. 404, 412 (App. Div. 2024) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). We afford no deference to the trial court's legal conclusions, however, which we review de novo. N.J. Div. of Child Prot. & Permanency v. B.H., 460 N.J. Super. 212, 218 (App. Div. 2019).

Eric raises three issues on appeal. He posits: (1) the trial court impermissibly found he had abused or neglected Jacob and David because he was not a caretaker or guardian of the children pursuant to N.J.S.A. 9:6-8.21(a) and N.J.S.A. 9:6-2;[5] (2) the evidence in the record fails to establish his presence and timing at the hotel when the officer found the children; and (3) the trial court impermissibly used the Resident Text Message to corroborate its finding Eric was present at the hotel on September 1, 2021.

---

[5] Eric raises this argument for the first time on appeal.

A. Eric is a Parent Pursuant to N.J.S.A. 9:6-8.21(a).

N.J.S.A. 9:6-8.21(a) provides "'[p]arent or guardian' means any natural parent, adoptive parent, resource family parent, stepparent, paramour of a parent, or any person, who has assumed responsibility for the care, custody, or control of a child or upon whom there is a legal duty for such care." Eric interprets this language to mean being a "natural parent" alone is not sufficient pursuant to N.J.S.A. 9:6-8.21(a) because "natural parent" is modified by "who has assumed responsibility for the care, custody, or control of the child." He therefore urges he is not a "parent" because he had not assumed responsibility to care for Jacob and David and argues the January 27, 2021 orders "prohibited [him] from having care, custody, and control of [Jacob and David]."

Eric's arguments are belied by the plain language of N.J.S.A. 9:6-8.21(a) and the record. To begin, Eric's argument that "natural parent" is modified by "who has resumed responsibility for the care, custody, or control of the child" misconstrues the statute's plain language, as it continues, ". . . or upon whom there is a legal duty for such care." N.J.S.A. 9:6-8.21(a). A legal relationship exists between a child and their natural parents, see N.J.S.A. 9:17-39, and such relationship places certain legal obligations on the natural parent to care for their child, see e.g., Colca v. Anson, 413 N.J. Super. 404, 414 (App. Div. 2010)

14

("[O]ne of the fundamental concepts in American society is that parents are expected to support their children until they are emancipated." (quoting Burns v. Edwards, 367 N.J. Super. 29, 39 (App. Div. 2004))); Pascale v. Pascale, 140 N.J. 583, 591 (1995) ("Each parent has a responsibility to share the costs of providing for the child while [the child] remains unemancipated." (quoting Martinetti v. Hickman, 261 N.J. Super. 508, 512 (App. Div. 1993))); Newburgh v. Arrigo, 88 N.J. 529, 543 (1982) ("[T]he privilege of parenthood carries with it the duty to assure a necessary education for children."). Just as Eric cannot voluntarily terminate his own parental obligations for any of his biological children, Eric cannot rely on a court order limiting his visitation with his children to show he did not have a legal duty to parent Jacob and David. Because no one disputes that Eric is Jacob's and David's natural father, a parent-child relationship creating a legal duty to care for the children exists. See N.J.S.A. 9:17-39.

Moreover, even if Eric's interpretation of N.J.S.A. 9:6-8.21(a) were correct, his argument would nevertheless fail as he continued to maintain legal custody of both children on September 1, 2021, pursuant to the January 27, 2021 orders, which only limited physical custody and visitation. Finally, it is disingenuous for Eric to argue he cannot be found to have abused and neglected

A-1275-23

his children in the very orders where he acknowledged that violation of "these terms may result in the Division becoming re-involved, [and] a finding of abuse/neglect being made . . . ."

### B. The Trial Court's Finding that Eric Abused or Neglected Jacob and David Was Based on Substantial, Credible Evidence in the Record.

"Abuse and neglect cases are generally fact sensitive" and "require[] careful, individual scrutiny." N.J. Div. of Youth and Fam. Servs. v. P.W.R., 205 N.J. 17, 33 (2011). "The purpose of a fact-finding hearing in an abuse or neglect proceeding is not to assign guilt to a defendant, but to determine whether a child is . . . abused or neglected." N.J. Div. of Youth & Fam. Servs. v. V.T., 423 N.J. Super. 320, 328 (App. Div. 2011). "In Title Nine proceedings, the Division has the burden of proving by a preponderance of competent, material, and relevant evidence that a parent abused or neglected a child." N.J. Div. of Child Prot. & Permanency v. B.P., 257 N.J. 361, 375 (2024).

A parent's failure to exercise a "minimum degree of care" is evidenced by "conduct that is grossly or wantonly negligent, but not necessarily intentional," when evaluated "in light of the dangers and risks associated with the situation." G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 178, 181, 182 (1999). "[E]vidence of actual impairment to the child will satisfy the statute, but in a case where

there is no such proof, the critical focus is on evidence of imminent danger or substantial risk of harm." N.J. Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 22 (2013); see also In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999) ("Courts need not wait to act until a child is actually irreparably impaired by parental inattention or neglect.").

At the fact-finding hearing, "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." N.J.S.A. 9:6-8.46(a)(4). See N.J. Div. of Child Prot. & Permanency v. J.A., 436 N.J. Super. 61, 67 (App. Div. 2014) ("In general, corroborative evidence need not be direct so long as it provides some support for the [child's] out-of-court statements.").

Here, adequate, substantial, credible evidence exists in the record to affirm the trial judge's finding Eric abused or neglected Jacob and David by the "lesser preponderance of the evidence standard." See N.J. Div. of Child Prot. & Permanency v. A.P., 475 N.J. Super. 472, 484 (App. Div. 2023). The basis for the court's finding was twofold: Eric endangered his sons by violating the January 27, 2021 orders meant to protect the children from his and Ellen's drug use, and Eric placed his children in imminent danger by leaving them in a hotel

room alone in the presence of uncapped hypodermic syringes within their reach. Eric disputes these findings by arguing the evidence fails to conclusively establish his presence at the hotel on September 1, 2021, and, even if his presence was established, the Division failed to establish the timing of when Eric was at the hotel. We disagree.

Eric's arguments fail in light of the facts in the record. Jacob told both the police officer and, later that day, the caseworker, that he and his brother had been staying at the hotel with both parents, were often left alone at the hotel, and had been left alone by both parents the morning of September 1, 2021. The statements establishing Eric's presence were adequately corroborated, as required by N.J.S.A. 9:6-8.46(a)(4), by ample evidence in the record. In her interview with the caseworker on September 1, 2021, Ellen stated Jacob and David had stayed with her and Eric at the hotel, Eric had stayed with them since August 19, 2021, and Eric was present on the morning of September 1, 2021 when she left to get the children breakfast.[6] Jacob's statements are further adequately corroborated by Ellen's sworn stipulation, in which she admitted she

---

[6] The parties disagree as to whether these statements are impermissible hearsay. Although hearsay, they are admissible as statements against interest because, by making these statements, Ellen was admitting she and Eric were having unsupervised contact with Jacob and David in violation of the January 27, 2021 orders during this time. See N.J.R.E. 803(c)(25).

had "left the children in the care of [Eric] who . . . was without supervision."[7] Finally, the family's hotel room was registered in Eric's name on August 31, 2021, the night before the incident prompting this matter. Indeed, Eric admits the hotel room was registered in his name on August 31, 2021, further corroborating Jacob's statement Eric left the children alone on September 1, 2021.

Although the trial court's decision is supported by adequate, substantial, credible evidence in the record, the trial judge improperly relied on the officer's testimony to the limited extent he referenced the Resident Text Message to corroborate Jacob's statements. This reliance was contrary to the trial judge's previous determination that any reference to the Resident Text Message in the officer's police report was impermissible hearsay because it referenced an out-of-court statement made by a non-testifying declarant to corroborate Eric's

---

[7] Eric incorrectly argues Ellen's stipulation was excluded from the trial record, citing the trial court's language from the November 29, 2022 and January 5, 2023 hearings, respectively: "[w]e will take a [twenty-five] minute break to allow for the filling out of the stipulation form. After the stipulation is placed on the record, [Ellen] can be excused and we will continue the trial"; and "[The Division caseworker] was the Division's final witness and the only other witness to testify during the actual proceeding, excluding, of course, the testimony offered by [Ellen] in support of her stipulation." However, neither of these passages support Eric's contention the stipulation was excluded from the record as the trial judge explicitly stated the stipulation was to be "placed on the record."

19

presence at the hotel on September 1, 2021. Notwithstanding, the trial court's partial reliance on the Resident Text Message amounts to harmless error pursuant to Rule 2:10-2 because there is ample other substantial and credible evidence of Eric's presence at the hotel and neglect of both children in the record to affirm the trial court's decision.

With Jacob's statements adequately corroborated and Eric's presence at the hotel on the morning of September 1, 2021 established, we affirm the trial court's conclusion that Eric failed to exercise a minimum degree of care, created a substantial risk of harm, and placed his children in imminent danger by violating the January 27, 2021 orders and leaving his children unsupervised within reach of uncapped hypodermic needles, by a preponderance of the evidence.[8] See N.J.S.A. 9:6-8.21(a).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[8] Although Eric argues the trial court could not prove the needles were his, we find this argument immaterial as the record indicates the room was registered to him, he left the children alone, and he knew Ellen had ongoing issues with substance abuse. With such knowledge, Eric knew there was a substantial risk his children would be in imminent danger if left alone with Ellen, resulting in another basis from which to conclude he failed to exercise a minimum degree of care with respect to his children. See G.S., 157 N.J. at 178, 181-82.